HENRY LOWENSTEIN and HENRY LOWEN-
STEIN, Administrator of the Estate of JULIUS
LOWENSTEIN, deceased, Respondents, v. OLD
COLONY LIFE INSURANCE COMPANY, a
corporation, Appellant.

**Kansas City Court of Appeals, May 4, 1914.**

**LIFE INSURANCE: Mis-statement of Age in Application.** Where
a life insurance company issues a policy to one who inad-
vertently made a wrongful statement in the application as to
his age, the application being afterwards corrected and the
additional premium paid, and the assets and liabilities trans-
ferred to another company, the latter company is bound by
the acts of its predecessor and the rights of plaintiff cannot
be restricted to the amount of insurance the premium paid
would have purchased at the correct age of the assured.

Appeal from Saline Circuit Court.—*Hon. Samuel
Davis*, Judge.

AFFIRMED.

*A. F. Rector* and *A. R. Hoy* for appellant.

*Duggins & Duggins* for respondents.

JOHNSON, J.—This is an action on a policy of
life insurance. The principal defense is the alleged
misrepresentation of the age of the insured in his ap-
plication and defendant confesses liability for the
amount of insurance the agreed premium would have
secured on the life of a person of the real age of the
assured. Plaintiff denies the insurance was procured
by misrepresentation and demands the face of the
policy with interest and the statutory penalty. A jury
was waived and after hearing the evidence the court
rendered judgment for plaintiff in accordance with the
prayer of his petition except that no penalty was al-
lowed. Defendant appealed.

No declarations of law were asked or given and the judgment must be regarded as a final adjudication in favor of plaintiff of every controverted issue of fact.

The material facts of the case, stated in chronological order, are as follows: In 1896, Julius Lowenstein, a resident of Marshall, applied in writing to the Royal Tribe of Joseph for a certificate of insurance and stated in his application that he was born in August, 1838, and was fifty-eight years old.' The application was accepted and a policy or certificate for $1000 was issued and delivered to him as a person of the represented age. The application was made a part of the contract which is claimed by defendant to have been governed by the laws relating to fraternal beneficiary societies but there is no proof in the record that it was a contract of that character (Gruwell v. Knights, 126 Mo. App. 496 and cases cited), and we shall regard it as an ordinary life insurance policy. Lowenstein paid premiums or dues which were assessed at a rate based on his represented age until 1903, when the Royal Tribe of Joseph reinsured its risks in the Cosmopolitan Life Insurance Association, a life insurance corporation of Illinois. Lowenstein was notified that the reinsurer "herewith assumes the benefit certificate No. 5407, issued by the Royal Tribe of Joseph of Sedalia, Missouri, on the life of Julius Lowenstein, and contracts to carry out the provisions thereof in accordance with the terms, provided the insurer complies with and fulfills the obligations assumed thereunder."

Pursuant to this notice Lowenstein exchanged his certificate for a policy issued and delivered to him by the reinsurer which recited that it was issued upon his original application to the Royal Tribe of Joseph and the premiums were based on his present age as computed from the date of his birth stated therein. Lowenstein accepted this new policy and paid premiums thereon at the stipulated rate until 1906, when the Association discovered in some way, not disclosed, that his age

had been misrepresented and that he was born in August, 1831, instead of 1838. Under date of November 5, 1906, the Association wrote him a letter submitting alternative propositions, the second being "that you pay the difference in the rate of assessment between what you are paying and what you should pay at your correct age since becoming a member of the Royal Tribe of Joseph, up to the present time, and continue to pay the correct rate of assessment at your correct age in the future." Lowenstein replied saying, "I positively did not misrepresent my age at the time of joining the Royal Tribe of Joseph. I told the organizer that as near as I could tell at the time, my age; as I came to this country very young, had no way of telling of my years at that time. I wish, therefore, to accept your second proposition of your letter of the 5th inst."

The Association replied November 20th giving the grand total of the deficiency in the past premiums as $87.30 and requesting remittance of that amount by return mail. The letter closed with the statement, "Beginning with the November, this month's assessment, your correct rate is $2.90 (per month) instead of $2.30 as you have been paying. This matter must be attended to by return mail."

Lowenstein promptly remitted the amount demanded ($87.30) and thereafter continued to pay monthly premiums or assessments until September, 1909, when the Cosmopolitan Association reinsured its risks in the defendant company, another insurance corporation chartered by the State of Illinois. By the terms of the reinsurance contract the Association sold and delivered to defendant "all of its assets of every character and description wheresoever located, including all its applications, inspection reports, books of accounts, records, files and indexes which in any manner bear upon, evidence or explain the risks taken or refused in the course of its business from the date of its organization," and defendant assumed all of the liabil-

ities of the Association and agreed "to deliver to each of the policy or certificate holders of the said Association . . . the company's 'Convertible Term Policy,' which said policy shall provide . . . a two-year term policy with the right of conversion by the holder during said period of two years to any other form of policy the company issues . . . at the rate of premium required therefor at the attained age," etc. Such "Convertible Term Policy" was to be delivered to each holder of an Association policy who, on or before November 14, 1909, would deposit his policy with defendant and consent to take such "two-year term policy" in exchange. Defendant bound itself "that upon the receipt of any such policy or certilcate from any member of said Association, which said policy or certificate being in good standing at the date of its delivery to the company, it will issue forthwith to the member so depositing said policy or certificate a receipt, acknowledging receipt of payment of premium to the date to which said premium has been paid." The substituted policies were to be issued without medical examination and regardless of the condition of health of the assured but with the right to a lien on the term policy "for ten per cent of each annual premium commuted on the annual premium basis to be paid by said member on said Convertible Term Policy, to be treated by the said company as an Impairment Lien on account of no examination being required to issue said exchange policy."

The contract contained the further provision that "All policies to be issued by the company under the provisions of this contract in substitution of policies or certificates issued by the Association up to the date of ratification of this contract shall be based on the original application to the Association, which application shall bear the same relation to the policy to be issued by the company in substitution, as herein pro-

vided, as if such application had originally been made to the company instead of said Association.''

Following the signing of this contract the two Companies advised Lowenstein by letters and notices of the agreement of defendant to reinsure the risks of the Association and urged him to send in his policy for exchange. They did not tell him that defendant proposed to issue a short term policy nor that such policy would be issued on the faith of his original application. Their representation was that defendant assumed the risk the policy he carried imposed on the Association. Lowenstein responded by sending his policy to defendant and under date of October 14, 1909, defendant issued to him the following receipt, denominated on its face a ''Certificate of Assumption:''

''Received by the Old Colony Life Insurance Company, Certificate of Policy No. 21155 of the Cosmopolitan Life Insurance Association of Freeport, Illinois. The Old Colony Life Insurance Company acknowledges itself bound to the holder of said certificate or policy under the provisions of the contract between said company and said Cosmopolitan Life Insurance Association, ratified September 9, 1909, by the members of said Association in legal meeting assembled. Said company will promptly deliver to the holder of said certificate or policy its policy provided for in contract above referred to between said company and said Association, which shall be paid up to Oct. 25, 1909, being the end of the period for which payment has been made to the Association.''

On October 25th of the same year defendant delivered to Lowenstein a short term, nonparticipating policy by the terms of which it agreed to pay plaintiff (his son) immediately upon receipt of proofs of death the sum of $1000. The caption contained the words and figures ''Premium $111.09. Age 71.'' This policy does not refer to the original application nor contain any other reference to the age of the assured

than the following: "If the age of the assured has been misstated the amount payable hereunder shall be such as the premium paid would have purchased at the correct age, or the premium may be adjusted and credit given to the insured or to the company according to the company's published rate at the date of issue."

Further the policy provides that it "is not entitled to participate in the profits or divisible surplus of the company" and that "this policy may be converted upon written request of insured and without medical examination at any time within two years from its date by exchange, for any form of policy issued by the company at the date of exchange except term policies, at the company's published premium rate for the age attained."

The assured died at Marshall December 11, 1909, less than two months after the receipt of this policy. Plaintiff made proofs of loss in which he stated that his father was born August 15, 1829, in Tuchel, Prussia Poland. In answer to the question, "State authority for answer to last question (family record, certificate of birth or otherwise)," he answered, "No family records—facts as told by deceased in his lifetime to claimant."

Plaintiff claims that the policy was issued and the annual premium of $111.09 was charged on the erroneous supposition that Lowenstein was seventy-one years old at that time, when, in truth, as shown by the proofs of loss, his age was eighty years; that this mistake was induced by the false representation of the original application to the Royal Tribe of Joseph that the applicant was born in 1838; that under the terms of the policy, which must be treated as an Illinois contract, the assured must be considered as having misstated his age to defendant and plaintiff is entitled to recover only the amount of insurance the annual premiums of $111.09 would have purchased at the correct age. It is shown that the annual premium on such

179 App. 24

policy for a person eighty years old was $211.37, and that the premium of $111.09 would have purchased insurance in the sum of $528.80. Further it is shown that Lowenstein owed $90.99 on the first premium and deducting this from $528.80, and deducting also $11.10, the amount of the impairment lien, left a remainder of :$426,71, which is the sum defendant would pay in full discharge of its liability under the policy.

Pursuant to the reinsurance contract the Cosmopolitan Association turned over to defendant all its applications, books, records, and correspondence, including such documents as it had formerly received from the Royal Tribe of Joseph. At the time it issued the policy in suit it had in its possession not only the original application of Lowenstein, but also the records and correspondence of the Association showing the discovery of the misstatement of age in the original application and the readjustment of the contract of insurance to conform to the conceded fact that the birth of Lowenstein was in August, 1831, instead of August, 1838. In explanation of the mistake in the policy the officers of defendant testified that they looked only to the original application and did not examine the correspondence and records relating to the correction of the misstatement until after the proofs of loss informed them of the discrepancy between the application and the policy issued by defendant. Further it appears from the records of the Association in the possession of defendant that for some strange reason the Association had followed its sharp and successful correspondence with Lowenstein which resulted in his tacit confession that he was born in 1831 and his payment of the amount of the claimed deficiency in past premiums, by continuing to levy and receive payment of monthly assessments on the old basis instead of the new. The oversight of the Association (for it cannot be regarded as anything else) did not mislead defendant, since its officers did not inspect the files and rec-

ords which would have disclosed the readjustment of the insurance, but, as stated, contented themselves with an inspection of nothing but the original application. Plaintiff and one of his brothers testified their father came to the United States from his birthplace in Europe when he was very young; that there was no record or family history of his age and that even he did not know the year of his birth. As we understand the evidence the statements of plaintiff in the proofs of loss relating to the age of his father were a mere guess or conclusion founded on vague and unreliable information. Plaintiff is not conclusively bound by such statements. The fact of the real age of his father is an issue legally raised by the pleadings and the trial court, sitting as a jury, well may have believed from the evidence that the readjustment of the contract of insurance forced by the peremptory demand of the Association was based on an agreement or understanding between it and the assured relating to the date of his birth which came as near the true fact as the inaccurate and unreliable data would permit. Whether Lowenstein fraudulently or innocently had misstated his age in his application to the Royal Tribe of Joseph, the Association, after acquiring full knowledge of the misstatement offered to continue the relationship of insurer and insured upon condition that he would make adequate restitution and would consent to treat the contract from the beginning and in the future as having imposed upon him the obligation he would have been required to assume had his age been stated accurately in the first place. This offer being accepted and performed, the effect of such acceptance and performance was to create a new contract of insurance which, so far as the subject of age was concerned, was wholly independent of, and unrelated to, the original application. Had Lowenstein died immediately after the readjustment agreement became effective the Association would have been in no

position to interpose a defense based on the misstatement in the original application which the parties, in effect, had agreed should be *functus officio*—should be eliminated as an integral part of the insurance contract. The fact that for some undisclosed reason the Association did not levy and collect subsequent assessments in accordance with the terms of the new agreement did not alter the relationship it established which continued to the date of the acceptance by Lowenstein of the policy issued to him by defendant, pursuant to the last reinsurance contract.

The risk the Association was under on the date it entered into the reinsurance contract was to pay the face of the policy on the death of the assured without any deduction on account of the misstatement in the application as to the age of the applicant. Under the terms of the reinsurance contract defendant, in consideration of succeeding to the assets and business of the Association, assumed its risks and so notified Lowenstein and offered to substitute a policy of its own issue for the one he had, without requiring a medical examination or a new application. In every possible way it assured him that it was merely stepping into the shoes of the Association. Neither its letters and notices to him nor the short term, nonparticipating policy it induced him to take contained any intimation that it proposed to revive his old application to the Royal Tribe of Joseph and make it a part of the new contract of insurance. The policy did indicate in its caption that an error had been committed by defendant in the statement of the age of the assured but there is a material difference between an error induced by the false representation of the insured and one resulting from negligence or mistake of the insurer.

Neither the laws of Illinois which defendant contends control the interpretation of the policy, nor of this State, give the insurer the right to have his liability reduced on account of his own mistakes. Sec.

208u, Hurd's Rev. Stat. Ill. 1911, provides that "if the age of the insured has been misstated the amount payable under the policy shall be such as the premium would have purchased at the correct age," but this obviously refers to representations of the insured and in a subsequent clause of the same section policies of temporary insurance and nonparticipating policies (such as the present) are expressly exempted from this provision. [Sec. 5c, 208u.]

The statutes of Illinois do not aid the position of defendant nor is there any stipulation in the policy which will justify the contention that defendant may take advantage of its own mistake in the age of the assured. The provision in the policy that "if the age of the assured has been misstated the amount paid herein shall be the same as the premium would have purchased at the correct age," is quoted literally from the Illinois statute and refers, as does the statute, to misrepresentations of the assured in procuring a policy but there were no such misrepresentations made to defendant.

Defendant chose, both in its contract of reinsurance and in its proposals to Lowenstein, not to call for a new application but to step into the position of the passing Association and to shoulder its burdens. The old application was dead beyond recall. The records and files in the possession of defendant disclosed the cause and manner of its taking off, and defendant had but to look at what was before it to know that the insurance was being carried on a substituted agreement which had wholly disregarded that application.

We do not wish to be understood as intimating that defendant would not be entitled to a correction of a mistake which would give it a lien on the policy for the amount of the difference between the premium it charged and the premium it should have charged. We express no opinion on that subject since it is foreign to the issues raised by the pleadings. What

we are holding is that the mistake made by defendant was not the result of any misrepresentation of Lowenstein and, therefore, that neither the provisions of the laws of Illinois nor those of the policy itself give support to the position that the recovery of plaintiff should be restricted to the amount of insurance the premium paid would have purchased at the correct age of the assured.

The judgment is affirmed.   All concur.