JOHN HANCOCK MUT. LIFE INS. CO.
v. STANLEY.

No. 14984.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 12, 1948.

Rehearing Denied Dec. 10, 1948.

Samuels, Brown, Herman & Scott and William M. Brown, all of Fort Worth, for appellant.

R. B. Gambill and John L. Sullivan, both of Denton, for appellee.

SPEER, Justice.

This is a suit by appellee, Abbie Myrtle Stanley, against appellant, John Hancock Mutual Life Insurance Company, on a life insurance contract insuring the life of Louis D. Stanley, now deceased.

It is unnecessary to give the details of appellee's petition since they are not chal-

lenged in this appeal. It is sufficient to state that appellee is the surviving wife of the insured and is the named beneficiary in a certificate issued by appellant under the provisions of a group policy issued by appellant to Central Louisiana Electric Company (to which we will refer as the employer) on its employees. Under the provisions of the master policy the coverage of an employee was controlled by the amount of his salary. By stipulations in the record deceased's salary was such as would make $2,500 the amount of his insurance if there was liability by appellant.

Insured died in Texas and suit was instituted in the District Court of Denton County for the recovery of the face of the contract and for statutory penalty and attorney's fees; apt allegations were made relative to the items of penalty and attorney's fees.

Appellant defended upon an answer of general denial and special pleas to the effect, (1) that it was not furnished with proof as required by the terms of the policy (setting out in its answer the conditions of its liability as provided by the policy); (2) insured terminated the certificate of insurance by resigning from his position with his employer on May 31, 1946 and accepted employment and performed services for a concern in Texas not connected or affiliated with his employer who held the master policy; that because of the matters thus plead the certificate sued on had terminated and appellant was not liable in any sum.

Trial was to the court without a jury; judgment was entered for appellee for the face of the certificate with statutory penalty and attorney's fees; hence this appeal.

We must keep in mind that the employer carried the master policy on its employees and that such employees, including the deceased, under certain conditions not necessary to point out here, could have a certificate issued to them, as did the deceased. The crucial point in the contract reads: "Extension of death benefit in the event of total disability. If due proof is furnished to the company on its prescribed forms that the employment of the employee terminated with the employer on account of total disability from bodily injury or disease, which prevented the employee from engaging in any business or occupation and from performing any work for compensation or profit and that such disability was continuous until the death of the employee * * * that the amount of insurance on the life of the employee at the date of termination of employment will be paid to the beneficiary, provided said proof is furnished to the company at its home office within ninety days of the death of the employee."

Appellant relies upon five points of error. The first point is too long to copy here but its substance is: Since appellee's right of recovery depended upon proof that deceased terminated his employment with his employer on account of total disability from bodily injury or disease, the trial court erred in rendering judgment for her, because (a) the undisputed evidence shows that the insured voluntarily resigned his position with his employer in May, 1946 and accepted employment with another concern in Texas; (b) there was no evidence that the insured terminated his employment on account of disabilities caused by bodily injury or disease; and (c) the evidence was insufficient to support a finding that the insured resigned his employment on account of disabilities caused by bodily injury or disease.

Appellant requested the court to file findings of fact and conclusions of law. Appellant objected and excepted to each except those about which there were no conflicts in the testimony. Without dispute appellant issued its group policy to the employer, effective December 1, 1943 and on the same date appellant issued its certificate to deceased who had been an employee for many years. The policy and certificate under the circumstances of this case gave deceased life insurance coverage to the extent of $2,500, naming appellee as beneficiary. These matters were included in the court's fact findings one and two.

In view of appellant's contentions under that part of the contract above quoted by us, the court further found:

"3. On or about May 25, 1946, the insured, Louis D. Stanley left his employ-

ment with the Central Louisiana Electric Company, Inc.

"4. Louis D. Stanley was of unsound mind at the time of the termination of his employment with the Central Louisiana Electric Company, Inc., and was then unable to, and did not, by reason of his mental condition, exercise the conscious volition and free agency of a rational intellect with respect to leaving his employment with the said Central Louisiana Electric Company, Inc.

"5. Louis D. Stanley was of unsound mind immediately prior to the termination of his employment with the said Central Louisiana Electric Company, Inc., and was of unsound mind continuously thereafter until the death of the said Louis D. Stanley, on or about August 16, 1946.

"6. Louis D. Stanley was totally disabled, by reason of insanity, from engaging in any business or occupation and from performing any work for compensation or profit at the time of the termination of his employment with the Central Louisiana Electric Company, Inc.

"7. The termination of the employment of Louis D. Stanley by the Central Louisiana Electric Company, Inc. was on account of and by reason of the total disability, by reason of insanity, of the said Louis D. Stanley to engage in any business or occupation and to perform any work for compensation or profit.

"8. Louis D. Stanley was totally disabled, by reason of insanity, from engaging in any business or occupation and from performing any work for compensation or profit continuously from the time of the termination of his employment with the Central Louisiana Electric Company, Inc. to the date of his death."

■ When no jury is had the fact findings of the trial court are equivalent to a jury verdict on special issues. This is true because the court thus becomes the trier of the facts as well as the law. 3 Tex. Jur. 1102, sec. 771; Corn v. First Texas Joint Stock Land Bank, Tex.Civ.App., 131 S.W.2d 752, writ refused.

■ The settled rule in this state is that a reviewing court will not disturb the fact findings of the trial court (when no jury is had) if there is some evidence of probative value to support the same, viewing the evidence in the light most favorable to the successful party and indulging every legitimate conclusion that is favorable to him. McCasland et al. v. Henwood, Tex.Civ. App., 213 S.W.2d 555 and cases there cited, to which many more could be added.

■ It is undisputed that deceased in 1942 received a severe head injury in an accident, causing his hospitalization for several weeks, where he was unconscious practically the whole time; he returned to work about nine months after he was injured; his employer gave him lighter work when he returned; his head and back gave him pain at all times; the noise of the plant bothered him to such an extent that he was very nervous and could not stand it; he was placed with a "line crew" for a few weeks; he could not get along with that crew and was given work in a small plant outside of town. He was, at the end of about two months, brought back to the main plant and could not get along with the head engineer and was taken out of the plant and put to painting trucks; shortly thereafter he was shifted from one plant to another but did not like the work because there were Negroes among those with whom he had to work and he had trouble with the supervisors and threatened one of them with a knife; he said his employer did not have any use for him and would not give him any regular job; he further told his wife that it seemed he could not do a satisfactory day's work. He constantly complained of feeling bad and was off duty much of the time; his physical and mental condition grew constantly worse; he got more nervous and irritable and became suspicious of the fidelity of his wife; he attacked and chocked her because of his suspicions of her affairs with other men. The incident of chocking was reported to his employer and the Company sent him to Mayo's Clinic for treatment in 1944; after his return he grew worse in his nervousness and accusations against his wife and on one occasion backed her into a corner and placed an ice pick against her breast and said he was going to kill her. He was then sent by his employer to New

Orleans for examination by nerve and brain specialists. He grew worse with time and would curse and abuse his wife. He would mark the soles of her shoes with chalk before going to work and examine them later to see if they had been worn. If he found tracks about the house he would take her shoes and measure the tracks with them. His nearest neighbors said in substance that especially after his return from Mayo's he was nervous, restless and acted quite differently from his natural ways before the head injury; he would walk up and down the street in front of their house at night; when they talked to him "he had that terrible look out of his eyes;" he was a changed man; he was not right, there was something wrong with him. Appellee said deceased was of unsound mind when he resigned from his job.

Deceased and his wife owned a small home at Denton, Texas, where he had worked for the same employer before being transferred to Kaufman, Texas and then to Louisiana; both had brothers and sisters at Denton, Texas; they visited relatives at Denton in March of 1946; deceased's brother saw his then condition and sought to get him transferred back to Denton but failed. · In some way the Business Manager of Texas State College for Women at Denton learned that deceased was available as an engineer at the College power plant and contacted him in Louisiana. Deceased was employed and he advised his employer that he was resigning; his resignation was accepted as of June 1, 1946; he moved his family back to Denton about May 25, 1946 and went to work for T. S. C. W. He got more nervous and increased his suspicions and abuses of his wife; he threatened several times to kill her; he believed his brother-in-law was having an affair with his wife; he armed himself with a pistol and went out to hunt the brother-in-law but did not find him. He later went to the brother-in-law and threatened to kill him but was talked out of it. Appellee testified that there were absolutely no grounds for his suspicions of her infidelity. The sheriff was informed of deceased's threats, a complaint of lunacy was filed against him, he was arrested, tried and convicted and sent to a sanitarium at Dallas, Texas on

June 20, 1946. He was observed and treated at the sanitarium by Dr. Schwenkenberg. Deceased's case was diagnosed as one of schizophrenia, paranoid type, chronic, severe. The doctor explained the meaning of such diagnosis. Treatments continued until August 14, 1946, without favorable reaction, when an operation was decided upon. With the consent of the wife and brothers, deceased was operated on August 14 and died two days later.

There were several lay witnesses who had known deceased for many years before he received the head injury. They described the man and personal characteristics and compared them with the same things and his acts and conduct after the injury and noted the progressive effects up to the time he returned to Denton and during the short time he worked at T. S. C. W. and they gave it as their opinions that he was of unsound mind when he returned to Denton. Their favorite expressions were, "Well he was just a changed man; he was different from the man I had known previously; he was nervous, irritable and indecisive in many matters and hesitant in his efforts to relate incidents."

Dr. Schwenkenberg testified as an expert witness on mental diseases and gave it as his opinion that deceased was of unsound mind for a considerable time prior to the occasion of his arrest. He said in response to a hypothetical question that it was his opinion, based on what he saw and observed, the history of his condition embraced in the question, that the man was mentally sick before and at the time he resigned his position and was not capable of making a normal decision; that he may have worked but was not physically nor mentally able to do so; that deceased's mental condition was the motivating cause of his resignation; that in reaching this opinion he could not help but bear in mind the head injury received in 1942 and the deceased's subsequent acts; that the injury sustained would be conducive to bringing about his changed attitude, conduct and personality. The hypothetical question was objected to by appellant and forms the basis of another assigned point of error.

In view of the nature of the testimony and the cited authorities, we are forced

to the definite conclusion, that there was sufficient competent testimony to support the court's fact finding on the subject.

Second point complains because the court, over appellant's objection, permitted Dr. Schwenkenberg to testify that in his opinion insured's resignation in May of 1946 was motivated by his mental condition.

The doctor had previously testified without objection by appellant substantially that from the condition deceased was in when he was brought to the sanitarium, he had been mentally sick and incapable of work for quite a while before he first saw him; that this condition had existed for more than a month; that during that time he was incapable of normal thinking. A hypothetical question was put to the witness and in response the doctor said that it was his opinion that deceased was of unsound mind when he resigned in May, 1946. In response to another question he answered that based upon his own observations of deceased and the facts related in the hypothetical question it was his opinion that deceased's mental condition was the motivating cause of his quitting his job. Appellant's objection was in effect that the hypothetical question was not based upon any testimony of facts in the case. The record reveals that Dr. Schwenkenberg testified by deposition and these depositions were read before the other witnesses testified. Trial being to the court the objection was overruled. We have carefully studied the question in connection with the two volumes of testimony; some of the testimony given has already been pointed out by us. We think there is ample testimony to authorize all that was included in the hypothetical question. A hypothetical question to an expert need not embrace all the facts in evidence but may be confined to that which supports only the theory of the one asking the question. 19 Tex.Jur. 440, sec. 287. The trial court may in his discretion permit counsel to include in his questions facts which he proposes to prove. 19 Tex.Jur. 443, sec. 288. It should, perhaps, be observed that if testimony supporting the hypothetical question should not later be offered, the court should make such

ruling before finishing the trial as seems necessary to take care of the rights of the parties. We see no merit in the point raised.

Third and fourth points will be discussed together. They are to the effect: (3) Appellee did not timely furnish to appellant the proofs of claim as required by the policy and certificate contract; and (4) the court erred in admitting in evidence certain correspondence shown by appellee's exhibits one to five inclusive.

By fact findings 13, 14 and 15 the trial court found substantially that appellee advised appellant within ninety days after the death of her husband that she claimed and expected payment of the full amount of the extended insurance; that she furnished to appellant all information required of her in regard thereto and that said claim and information so furnished were communicated to appellant's home office and that appellant denied all liability to appellee within said ninety day period.

Appellee testified that after the death of her husband on August 16, she went to see the resident agents at Dallas, Texas and told one of them she was making claim for the insurance; he did not give her any blanks to fill out; she did not think that they told her to do anything; she told the agent of the situation and he said he would write the company and would notify her later. He wrote a letter in her presence and gave her a copy of it. The agent said the company would make its own investigation and that appellee need not do anything.

The copy of the letter was in evidence, over appellant's objection that the letter was offered in an attempt to prove waiver and estoppel by appellant when there were no pleadings thereon. Appellee's counsel offered the letter for all purposes and for proof of claim. The letter is too long to copy here. It was written by appellant's agent at Dallas, Texas, and addressed to appellant's home office. It began with this expression: "Again I find it necessary to write you in regard to a situation that has come up in Texas, which presents a very unusual and difficult problem." It continues by giving at length a history of de-

ceased's employment and the issuance by appellant of the master policy and certificate to deceased; the head injury received by deceased in 1942, his hospitalization, recovery and return to work were all related substantially as appellee later testified in the case and as she had told it to the agent. "During this last period of employment he (deceased) showed signs of mental degeneration and remorsefulness, which finally resulted in his termination of employment with this company." (His employer.) That on June 1, 1946 he was employed by T. S. C. W., was arrested on the job about June 19 after he had threatened to kill a man; he was committed to an institution on June 22, was operated on August 14 and died on August 16. That all these matters have been discussed with Mrs. Stanley (appellee); she wants all the facts put before the company "in an effort to establish her claim under the group certificate." He further said in the letter, "No one here is in a position to say definitely whether or not this claim has merit under our extension of death benefit;" that under the circumstances "it appears that Mr. Stanley's mental faculties became considerably lessened after his accident. * * * Herewith you have all the facts that have been presented. I trust that should you desire further information you will contact me at your earliest convenience."

Appellee received a letter from appellant's home office, dated October 28, 1946, introduced in evidence, concerning her claim, and while it contains matters about other phases of insurance not involved here, it denied any liability for further insurance on the life of deceased.

Referable to the third point under discussion, we note that it is claimed that notice and proof of claim were not "timely" filed with appellant as required by the policy. In the absence of a stipulated meaning in the policy, such words as "furnish," "due" and "proof" will be given their ordinary meaning in determining the question of whether or not the requirements of the policy have been met. "Due proof" as contained in the provision of the contract above referred to ordinarily refers to the time in which it is to be made. 24 Tex.Jur. 1101-2, sec. 284. It is undisputed that such notice and proof as were made by appellee were well within the ninety day period allowed in the policy. The letter by the agent to the home office shows that the information furnished to the agent was given by appellee "in an effort to establish her claim under the certificate." It is undenied that the agent furnished no forms for proof of claim and told her there was nothing more for her to do. The record does not contain any form or other character of proof required by appellant in case of death of an insured. In so far as appellee or this court knows, the "notice" and "claim" made by appellee to the agent is all that appellant "required" in such cases.

It is the recognized rule that when an insurer writes into its contracts provisions for its own benefit they will be construed most favorable to the insured, and that a substantial compliance with such provisions by the insured or his beneficiary is all that is required. 24 Tex.Jur. 1101, sec. 284. The object and purpose of proof of loss is to give notice and information of the loss and data necessary for the insurer to determine its liability and the amount thereof; the requirements of the policy in these respects will be given a liberal construction and a substantial compliance is sufficient. 33 C.J. 17, sec. 665; 45 C.J.S., Insurance, § 1067.

The letters to which we have referred, along with others pertaining principally to matters not involved here, form the basis for the fourth point of error. The objection urged to their admissibility was that there was no pleading of waiver and estoppel by appellant. They were admissible as against that objection. They tended to establish appellee's allegations of notice and proof of claim, and corroborated her testimony as to the notice of death and claim under the policy to which we have already referred. Appellant offered no testimony whatever to contradict or challenge appellee's testimony concerning her visit to and conference with the agent of appellant and the agent's communication with the home office. We think the testimony was

sufficient to sustain the court's fact findings and that the exhibits were admissible in evidence over the objection urged.

■ The fifth point assigns error of the court in rendering judgment for appellee for statutory penalty and attorney's fees under Article 4736, R.C.S.1925, Vernon's Ann.Civ.St. art. 4736. Appellee alleged facts which if proven ordinarily would have entitled her to recover these items; she proved, without objection by appellant, all she had alleged; there was no testimony offered by appellant to the contrary. The court effectively found in his findings 11 and 12 that her testimony was true and concluded as a matter of law that she was entitled to recover the statutory penalty and attorney's fees.

Appellant argues that it is undisputed that the master policy and the certificate to the insured were issued at the home office of appellant in another state to the employer and insured in Louisiana. The truth of this contention cannot be denied. Appellant then contends that under these circumstances, Article 4736, R.C.S., has no application to this contract. It cites and relies upon Metropolitan Life Insurance Co. v. Greene, Tex.Civ.App., 93 S.W.2d 1241. In the view we take of this appeal, we think the cited case is not controlling here. In that case it was found that plaintiff's disability insurance contract was issued in California and extended to him while he lived in Arizona and that his disability occurred in the latter state and that his contract terminated there. Only parts of those matters are present in the instant case; under the "extended" life insurance provision of the contract if the insured was permanently disabled during his employment with his then employer, his life insurance continued in his favor under the existing conditions until he died; these conditions were found to exist. His certificate matured in Texas; there is no provision in the contract limiting the insurer's liability to any particular state. Moreover, in the cited case the court held that in neither California nor Arizona was there any law authorizing the recovery of penalty and attorney's fees. While the opinion does not give the basis for that holding, we may assume that the facts disclosed it. There is nothing in the record before us to indicate whether or not penalty and attorney's fees are recoverable under the laws of Louisiana. The general rule is that the laws of another state on a given subject are the same as those of Texas when trial is had in this state. 17 Tex.Jur. 297, sec. 84 and the many cases cited in the footnote.

■ Of course when the plaintiff's right of recovery or a defendant's defense thereto is sought to be established under the laws of another state, such party will, upon proper pleadings, be permitted to introduce proof of the laws of another state.

Rule 184a, Texas Rules of Civil Procedure, deals with this subject. That rule in substance provides that if either party desires that the court shall take judicial knowledge of the laws of another state, he shall make a motion to that effect and furnish to the court sufficient information to enable him to comply with the request. Nothing of this kind appears in this record.

■ Rule 94, T.R.C.P., requires a defendant to plead his affirmative defenses upon which he relies. Appellee had specifically plead the facts relied upon to recover penalty and attorney's fees. Those items were essential parts of what she sought to recover. If appellant had an affirmative defense to these items, such as is insisted upon here, it was imperative under the cited rule that he plead it and if he fails to do so, as in this case, he has laid no predicate for the introduction of testimony to establish it as a fact.

The appellant made no request for the court to take judicial knowledge of the laws of Louisiana, nor did he plead that the laws of that state differed from those of Texas with respect to penalty and attorney's fees in claims on insurance policies.

■ It has long been the recognized rule that trial courts will not take judicial notice of the statutory laws of a sister state and where such statutes are relied upon as a basis for recovery or as a defense, they must be pleaded by the party who relies upon them. They are never provable unless pleaded. If pleaded they must be proven. Lamb v. Hardy, 109 Tex. 414, 211 S.W. 445 and cases cited; Vickers v. Fau-

424

bion, Tex.Civ.App., 224 S.W. 803, 805. This principle is not confined alone to Texas but is followed in other jurisdictions. 41 Amer.Jur. 296 and Stumberg's Conflict of Laws, page 157.

From a very careful study of this record we see no errors for which the case should be reversed, and therefore affirm the judgment of the trial court.