### NATIONAL SURETY CO. v. ROBERTS.
### No. 4559.

Court of Civil Appeals of Texas. Beaumont.

Jan. 27, 1949.

Rehearing Denied Feb. 23, 1949.

Marcus & Weller, of Beaumont, for appellant.

Fisher & Tonahill of Jasper, for appellee.

COE, Chief Justice.

The appellee, plaintiff below, filed suit in the district court of Orange County, Texas, against appellant, defendant below, to recover compensation at the rate of $20 per week for a period of 145 weeks, it being alleged by appellee that he sustained an accidental personal injury on or about September 23, 1946, in Orange County, Texas, while in the course of his employment with Fischbach & Moore of Texas, Inc., at which time said employee was insured under the Workmen's Compensation Law by appellant. It was further alleged by appellee that he lost on time from work but drew his regular wages until about March 5, 1947, at which time he began to suffer disability and he sued for compensation for the period of 145 weeks, beginning March 5, 1947; further appellee alleged that he did not file his claim for compensation within six months from the date of his injury, but set up certain allegations which were alleged to show good cause for failure to so file claim.

Appellant in due course filed its petition for removal of said cause to the Federal Court and at the same time filed and offered its bond for such removal. The court entered an order denying appellant such removal on the sole ground that although its petition and bond for removal were in due form of law the court considered that the amount in controversy as reflected by appellee's original petition did not exceed $3,000 exclusive of interest and costs. Appellant was duly allowed its Bill of Exception thereto and was permitted to file its answer and defend the cause in the trial court without waiver of or prejudice to its said petition for removal.

Appellant's answer upon which it went to trial, set up as a defense that appellee's incapacity did not exist for more than one week after his injury, and by sworn plea appellant alleged that claim for compensation was not filed until July 25, 1947, and denied the existence of good cause for failure to sooner file claim or to file claim within the statutory period. The trial was had to the court without the intervention of a jury and on April 23, 1948 the court rendered judgment finding that appellee had suffered a general total disability to his body for a period of 145 weeks, beginning March 9, 1947, and for which he was awarded a recovery of compensation at the rate of $20 per week for a period of 145 weeks, commencing March 9, 1947, or a total of $2,900. From this judgment this appeal is prosecuted.

By appellant's first two points they complain of the action of the trial court in denying appellant's petition for removal of the cause to the Federal Court.

In his original petition appellee alleged that he was injured on September 23, 1946 while in the employment of Fischbach & Moore of Texas, Inc., and after describing his injury as one involving his spine and lower part of his back, he further alleged the following: "As your plaintiff reached down to pick up a conduit he felt his spine pop and experienced severe pain in the lower part of his back to such an extent that he was not able to raise up in an upright position; that your plaintiff reported said accident to his foreman, Mr. W. E. Orr, Jr., and was sent to the First Aid by said foreman where he received diathermic heat treatments for approximately two weeks; your plaintiff was told by, Dr. Kinzer at the First Aid Station of said employer that his back would be all right in a short time, and your plaintiff believed and relied upon said representation made by Dr. Kinzer and was permitted to make time in said employment although he was not able to do his regular work because the company was trying to win an award for the smallest number of man-hours lost; that your plaintiff was further favored by the employer in that he was given light work until sometime in November, at which time there was a general lay-off; that during said period of time your plaintiff suffered some with pain in his back but continued with the work which the employer gave him and lost no time from his employment and continued to draw his regular wages and suffered no disability until on or about

March 5, 1947; that on or about March 5, 1947, your plaintiff began to have considerable trouble with his back as a result of the injury received in the accident while working for employer on or about September 23, 1946, and your plaintiff went to Dr. C. B. Shaddock, Orange, Texas, for treatment and was confined to the hospital by Dr. C. B. Shaddock for some two weeks and has continued under the treatment of Dr. Shaddock at intervals of from two to three weeks from said time up until the present date, and it was at this time, on or about March 5, 1947, plaintiff began to suffer disability as the result of the injury of September 23, 1946; that plaintiff has suffered total disability as a result of injury to muscles, tissues, ligaments, sinews, nerves, tendons, and bony structure of his back and other portions of his body as a result of said accidental injury on or about September 23, 1946 * * *".

It was further alleged in said petition that appellee's average weekly wage, upon which his compensation rate should be computed, was $72 per week, and he claimed to be entitled to recover compensation for 145 weeks from March 5, 1947, at the rate of $20 per week.

In its petition for removal, appellant alleged and set forth all the usual allegations with respect to diversity of citizenship, etc., and to show that the amount in controversy between the parties exceeded the sum of $3,000, exclusive of interest and costs, appellant alleged the following:

"Your petitioner says that a reasonable and proper interpretation of said petition is that same constitutes a claim and suit, not only for a period of 145 weeks from March 5, 1947, but likewise for the period accruing between September 23, 1946, and March 5, 1947, in that the allegations of plaintiff's petition and especially those hereinabove quoted show affirmatively that plaintiff is alleging a condition of disability between September 23, 1946, and March 5, 1947, and is alleging that he actually suffered disability, and was not able to do his regular work, even though he was permitted to make time and remain on the job at regular wages, and in this connection your petitioner shows that the mere fact that the plaintiff remained on the job and earned full wages would not impair or destroy his right to compensation for such period of time, if he actually suffered disability or loss of earning capacity during such period.

"Your petitioner further shows that while the plaintiff alleges that he suffered no disability until March 5, 1947, such allegations are in conflict with the specific allegations and facts set out in said petition expressly showing a condition of disability and loss of earning capacity between said dates and the allegation that he suffered no disability until March 5, 1947, is but a general conclusion of the pleader.

"Still further, your petitioner shows that the plaintiff, having alleged a condition of disability and loss of earning capacity, existing between September 23, 1946, and March 5, 1947, for which he would be entitled to receive compensation, upon proof of such alleged disability, and loss of earning capacity, is not legally empowered to waive any part of the compensation so accruing to him, and any attempt to remit such accrued compensation or to waive or to relinquish his right to it, or to fail to sue therefor, constitutes a waiver of compensation allegedly due him which is prohibited by law, and which he is not empowered to waive or relinquish.

"Your petitioner says, therefore, that the allegations of fact with respect to plaintiff's alleged disability between September 23, 1946, and March 5, 1947, coupled with his claim and demand for compensation for an additional period of 145 weeks from March 5, 1947, constitute a suit, claim and demand for compensation for the total period from September 23, 1946, to March 5, 1947, and a further claim, suit and demand for additional compensation for 145 weeks, from March 5, 1947, thereby constituting a suit, claim and demand for compensation in excess of one hundred sixty-eight (168) weeks at the rate of $20.00 per week, and likewise constituting a suit, claim and demand for compensation in excess of $3,000.00 and costs."

█ The rule is well established that in determining whether the matter in contro-

versy exceeds the sum or value of $3,000 the allegations of the petition are controlling.

 The allegations in appellant's petition for removal clearly set out the contentions here made in support of its Point of Error that the trial court was in error in refusing to grant their petition for removal of this cause to the Federal Court. We agree with appellant that appellee's petition wherein he alleged, * * * "Was permitted to make time in said employment, although he was not able to do his regular work because the company was trying to win an award for the smallest number of man-hours lost; that your petitioner was further favored by employer in that he was given light work until sometime in November, at which time there was a general layoff; that during said period of time your plaintiff suffered some with pain in his back but continued with the work which his employer gave him", alleges some degree of incapacity; however the degree and duration is not alleged. The allegations in said petition continue as a part of the same sentence * * * "and lost no time from his employment and continued to draw his regular wages and suffered no disability until on or about March 5, 1947." We are of the opinion that appellee's allegation that he suffered no disability from the injury complained of until on or about March 5, 1947, effectively precludes him from recovering compensation for any disability he might have suffered as a result of his injury before such date. We are convinced that if the pleadings as set out above are construed as a whole it must be said that the amount sued for by appellee was a sum less than $3,000. Appellant cites and relies upon the holding of this court in American Employers Ins. Co. v. Due, Tex.Civ.App., 166 S.W.2d 160, 161, the substance of which is to the effect that a compensation claimant cannot sue for compensation in an amount of more than $3,000 and by his pleadings waive his right to recover any amount above $2,999, and thereby avoid having the cause transferred to the Federal Court on proper petition and bond. However, we do not feel that the opinion in that cause is controlling here for the reason as was stated by the court that there the compensation claimant had sued for a sum within the jurisdiction of the Federal Court and undertook to reduce his claim below the jurisdiction of the Federal Court by voluntarily waiving the excess above $2,999. On motion for rehearing the court said: "We agree with appellee that he had the right to sue in the State district court for a sum less than the jurisdictional amount of the federal court, and thereby defeat federal court jurisdiction", citing cases among which is St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 590, 82 L.Ed. 845. In the course of that opinion it was said: "The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts. * * *" Later on in the opinion it is said "* * * If [plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." Having concluded that appellee's petition would only support a judgment in his favor for compensation at the rate of $20 per week for 145 weeks, totaling the sum of $2,900, it must be said that the amount in controversy, as shown by appellee's petition at the time appellee's petition for removal was filed, was less than the jurisdictional amount of the Federal Court, and there was no error committed by the trial court in overruling such petition.

Appellant's Points of Error Nos. 3, 4 and 5 present to us for determination the single question that appellee wholly failed to discharge the burden resting upon him to show good cause for not filing his claim for compensation within six months from the date of such injury and to the date of the actual filing of claim for compensation.

In the trial court's findings of fact which were filed herein is the following with respect to "good cause":

"6. That plaintiff suffered pain and experienced difficulty in performing his labors between September 23, 1946, and March 9, 1947, but lost no time from work by reason thereof.

"7. That on or about March 9, 1947, plaintiff's back began to give him considerable trouble and he went to Dr. C. B. Shaddock of Orange, Texas, for examination and treatment.

"8. That plaintiff has been treated continuously at various times since on or about March 9, 1947, by Dr. C. B. Shaddock and has remained under his constant observation.

"9. That plaintiff was not aware of the seriousness of his injury until he sought the advice and treatment of Dr. C. B. Shaddock at Orange, Texas, and that it was at this time that he was apprised that he had a total and permanent injury.

"10. That Dr. C. B. Shaddock at Orange, immediately upon beginning treatment of plaintiff on or about March 9, 1947, notified plaintiff's employer, Fischbach & Moore of Texas, Inc., that he was treating plaintiff and that he would like for a representative of said company or insurance company to call on plaintiff and investigate the nature of his injury.

"12. That plaintiff was rendered first aid treatment at the plant of the Dupont Company in Orange, Texas, immediately following his injury of September 23, 1946, and was advised by the doctor in attendance therein that he should return to work and continue with his work.

"13. That shortly thereafter, within two weeks of plaintiff's first visit to Dr. C. B. Shaddock and prior to March 23, 1947, one Jim Hardy, an adjuster for the defendant, National Surety Corporation, called upon plaintiff and advised him that he would investigate the claim and would do everything necessary to take care of plaintiff's rights, to-wit, filing notice of injury and claim for compensation with the Industrial Accident Board at Austin.

"14. That negotiations between plaintiff and said adjuster continued over a period of several weeks from and after said date, and said adjuster represented to plaintiff that he desired to settle his claim and that he would discuss settlement with him as soon as he had received a medical report as to his condition.

"15. That plaintiff, at the request of said insurance adjuster, submitted himself to the doctor selected by said adjuster.

"16. That during the negotiations between plaintiff and said adjuster no definite offer of settlement was made by either of said parties, the matter of settlement being merely discussed generally.

"17. That the representations of said insurance adjuster to the effect that he would do all things necessary to protect plaintiff's rights, to-wit, file notice of injury and claim for compensation with the Industrial Accident Board of Texas at Austin; that he desired to make a settlement of plaintiff's claim, lulled plaintiff into a sense of security, and caused him to delay placing his claim in the hands of his attorney earlier than he did; that on the day plaintiff contracted with his attorneys, Fisher & Tonahill, to represent him in said claim he called Mr. Hardy from the office of Fisher & Tonahill in regard to the proposed settlement, and Mr. Hardy informed him that he could not settle the claim since he had employed attorneys to represent him.

"18. That plaintiff finally placed his claim in the hands of his attorneys on July 19, 1947, and claim was then filed with the Industrial Accident Board by said attorneys on or about July 23, 1947.

"24. That plaintiff has shown good cause for his failure to file claim for compensation within six months from September 23, 1946, and for not filing it sooner than it was actually filed."

These findings were in line with the matters alleged as showing good cause.

In appellant's argument under these points he sets out evidence, both pro and con, as going to show good cause for delaying beyond the six months period the filing of a claim by appellee for compensation. As we understand the rule in matters of this sort it is that a reviewing court will not disturb the trial court's fact finding in a non-jury case if supported by some evidence of probative value and by indulging in every legitimate conclusion that is favorable to such finding. See John Hancock Mutual Life Ins. Co. v. Stanley, Tex.Civ. App., 215 S.W.2d 416 and cases there cited

Viewing the evidence in its most favorable light to appellee and disregarding all conflicting evidence and evidence to the contrary respecting the question of good cause, we have substantially the following as taken from the testimony of appellee: That on the date of his injury (September 23, 1946) his foreman sent him to First Aid; that the doctor did not examine him but instructed the nurse to give him diathermy; that after the treatment the nurse gave him a slip to give his foreman and he was assigned to light work; that when he saw the doctor (Dr. Kinzer) he was told that he probably had a strained muscle and that treatment would cure it; that he took treatment for two weeks, but discontinued it as it did not seem to do him any good; that he thought a little time would take care of his trouble without the necessity of further treatment; that he worked for Fischbach & Moore until November, 1946; that he did light work during this period; that his back was sore and stiff but seemed to be improved and he thought it was gradually getting better; that his back, after about three weeks or more after it was hurt, for sometime it got some better and I could straighten up and from then on it was about the same condition; that about the 1st of March, 1947, his back began to bother him so much that he went to see Dr. C. B. Shaddock of Orange; that the doctor examined him and prescribed treatment and had him rest in bed for some three weeks and at that time the doctor told him he had a serious back injury; that this was the first time he was aware of the fact that the injury of September 23, 1946, was of a serious nature; that Dr. Shaddock reported the injury to someone at the Dupont plant and as a result one Jim Hardy came to see him. This was sometime prior to March 23, 1947; that Hardy told him he was a representative of the insurance company (evidence shows that he was the agent of the appellant); that he gave Hardy a statement; that he asked Hardy if it was necessary for him to file any papers and Hardy told him that they were taking care of all of that; that Hardy asked him to submit to an examination by Dr. Stephenson; that this was sometime in April or May; that he was examined by Dr. Stephenson; that

Hardy told him he wanted to settle with him as soon as he got a report from the doctor; that he saw Hardy about six times and each time the conversation was concerning a settlement as soon as he got a report from the doctor; that Hardy kept putting him off so he consulted his attorney about July 4, 1947; that he had a date to see Hardy about a week later; that Hardy then asked him not to engage attorneys but to wait and see if they could reach a settlement; that he failed to file his claim before July 25, 1947, because he relied upon the representations of Hardy; that Mr. Hardy requested appellee to submit himself to an examination by a doctor of their choice for the purpose of finding out what was wrong with him in order that a settlement could be made; that he relied on the statements of Hardy, both as to his intention of settling the case and filing of such papers as should be filed with the Industrial Accident Board; that on July 19, 1947 he was advised by Hardy that if he employed lawyers he could not settle with him whereupon he employed lawyers and the claim was filed a few days thereafter; that while he was in the office of Dr. Shaddock on March 9th Dr. Shaddock called the company and that Hardy came to see him a short time later; that he then asked Hardy if there were some papers he had to file and Hardy said: "They would take care of that"; that until he consulted with Dr. Shaddock he thought his injury was just a strain; that Dr. Kinzer told him it was a strained muscle and that it would be all right in a short time; that he believed this and that he continued to believe that his back would get all right until he was examined by Dr. Shaddock; that he had been working in his usual occupation since the date of his injury; that he did only light work but had to work because he had a wife and children to feed; that he felt he was doing the wrong thing by working; that instead of it working out and getting better it got worse.

██ There is probably other evidence in the record that has some bearing on this issue, but this is the most important of probative value, which tends to support the finding of the trial court on the issue of good cause. The question of good cause has

been the subject of judicial discussions as much, if not more, than any phase of our compensation law, and the general rules applicable thereto seem to be settled. The requirement generally is a showing that the employee has prosecuted his claim with the same degree of diligence as would be exercised by a person of ordinary prudence in the same or similar circumstances. The serious trouble arises when we undertake to apply the rules to a given state of facts. It seems that the courts have been liberal with compensation claimants in upholding the jury verdicts finding a given state of facts to constitute good cause for a delay in filing a claim for compensation. In the case of Great American Indemnity Co. v. Beaupre, et al., Tex. Civ.App., 191 S.W.2d 883, a very similar state of facts as is presented in this cause was before the Dallas Court of Civil Appeals and by a majority opinion was held to constitute good cause. A vigorous dissenting opinion was filed by Chief Justice Bond, and on petition for writ of error it was refused—no reversible error. We have concluded that there was sufficient evidence to support the finding of the trial court on the question of good cause, and appellant's Points of Error Nos. 3, 4 and 5 are overruled. Lloyds Casualty Co. v. Meredith, Tex.Civ.App., 63 S.W.2d 1051; Hawkins v. Safety Casualty. Co., 146 Tex. 381, 207 S.W.2d 370; Watson v. Texas Indem. Ins. Co., Tex.Sup., 210 S.W.2d 989.

By appellant's Points of Error Nos. 6, 7 and 8 it complains of the judgment of the trial court in awarding appellee compensation for total disability for 145 weeks, beginning March 9, 1947, for the reasons that it is contrary to the undisputed evidence; that it is wholly without support in the evidence and that the evidence is insufficient to support such findings and judgment. In this connection the trial court made the following findings:

"1. That on September 23, 1946, plaintiff, Leo N. Roberts, sustained an accidental personal injury. while in the course of his employment with Fischbach & Moore of Texas, Inc., and at the time and place of said injury the said employer was duly insured under the Workmen's Compensation Law of Texas by the defendant, National Surety Corporation.

"3. That said plaintiff continued in his employment with said employer until about November 3rd, 1946, at which time he was dismissed because of a reduction in force.

"4. That said plaintiff continued working in a similar employment until about March 9, 1947, at which time he ceased working for a period of approximately three weeks.

"4a. That between September 23, 1946, and November 3, 1946, plaintiff was assigned light work but earned regular wages, because his employer was trying to win an award for the lowest number of man-hours lost.

"5. That with the exception of a period of approximately three weeks in March, 1947, plaintiff has continued to work regularly at his employment as an electrician, such being his regular employment, up to the time of trial of this cause.

"6. That plaintiff suffered pain and experienced difficulty in performing his labors between September 23, 1946 and March 9, 1947, but lost no time from work by reason thereof.

"19. That plaintiff has followed the occupation of an electrician continuously since March, 1947, and has earned wages in excess of those earned by him prior to the date of his injury of September 23, 1946, for the reason that the wage scale had increased since September 23, 1946.

"20. That plaintiff in so following said occupation and performing said labor has done so under difficulty and has suffered pain and discomfort in so doing.

"21. That the work done by plaintiff since the date of his injury has been the regular work of an electrician, and has been work that called for a regular electrician, and for such work the plaintiff received the regular wages of an electrician; however, plaintiff did not work as many hours and earn as much as he could have earned because of the pain and discomfort experienced by him in working.

"22. That plaintiff has thereby suffered a condition of general total disability for one hundred forty-five weeks and that said

injury of September 23, 1946 has been the producing cause and is the producing cause of such disability.

"23. That plaintiff's disability began as a result of the injury of September 23, 1946 on or about March, 1947."

Summarizing the evidence going to support these findings there is substantially the following by appellee: That he was injured on September 23, 1946, while moving a conduit; that he went to the First Aid Station but was not examined by a doctor; that he told the doctor his trouble and was given a slip for diathermy; that following said injury he was given light work to perform and that he continued his work until November 3, 1946 when there was a general lay-off. He then went to another job for Edenfield Electric Company without loss of time and worked there from December, 1946, until November, 1947, except for about two months when he worked for Fisk Electric Company in Houston, Texas; that when he quit working for Edenfield Electric Company he went to work for Grigsby Electric Company at Lake Charles where he was working at the time of the trial; that since November, 1947 to April, 1948 he had lost only a week or 10 days time; that the hourly wage scale on the Dupont job (where he was injured) was $1.87½, but on the date of the trial his hourly wage was $2; that his work week is 40 hours; that he usually made 40 hours per week; that the job he is now on is controlled by the Union; that the contract with the Union provides that no physical examination is required; that he did not tell the contractor anything about his physical condition; that he knows the foreman and the other men and his work is arranged where he does not do the heavy work; that since leaving Fischbach & Moore he has done control work which is working up switchboards and such as that; that he has done no heavy work; that in the early part of March, 1947, his back began to bother him considerably and he went to a Dr. C. B. Shaddock of Orange, Texas, for examination and treatment; that Dr. Shaddock had X-ray pictures made of his back and told him at that time that he had a serious injury and ordered him to bed for several weeks and cautioned him about riding in an automobile or getting in any position which would be injurious to his back; that Dr. Shaddock has been treating him since the above time and had fitted him in a back brace which he was then wearing; that it was necessary for him to work because he had to support his wife and two daughters; that he had an opportunity to put in a lot of overtime but he could not take advantage of it because of the condition of his back; that his foreman and co-workers assisted him by giving him light assignments and his co-workers by taking the heavy work off him; that he had not been able to put in as many hours per week as he did before his injury. Dr. C. B. Shaddock testified that he began treating appellee on March 9, 1947; that he immediately got in touch with the First Aid Department at the Dupont plant where Fischbach & Moore of Texas, Inc., were doing some work and received a history of appellee's injury; that he placed appellee in bed for several weeks and after some seven weeks of treatment appellee insisted that he would have to go to work through necessity in order to take care of his family; that he fitted him in a back brace in order to hold his back in as a favorable position as possible; that he was of the opinion that appellee was forcing himself to work and that his back pained him and bothered him in his work; that said injury caused nerve involvement and effected the nerve roots that go into the formation of the sciatic nerve; that he would not pass him for industrial labor and was of the opinion that said injury would effect appellee in procuring and retaining employment; that he would be refused work if he was given an examination by a large company who was an insurance carrier; that in his opinion appellee is suffering and will suffer total disability from and after March 5, 1947, for at least a period as much as 145 weeks; that in his opinion appellee could not perform the full duties of his job and that they would have to be lenient with him and give him light work; that appellee would have difficulty in doing work and would have difficulty in going up on things, crawling up and down; that if appellee's time was increased to 52 hours

per week he might not be able to discharge his work at all; that appellee has pain in his back which limits the amount of work he can do, and that pain is subject to becoming better and becoming worse; that he could not accurately say what the limitation would be but in his opinion he had worked more or less under difficulties and has been able to work only because he was given light work and has been shown privileges in avoiding difficult work; that in his opinion he is unable to procure and retain employment and carry on the usual task of a workman; that there are some jobs that he undoubtedly can do and favor his back and perhaps in electrical work for there are some jobs he can do where he can sit down and do the work or avoid heavy work, but if he were required to work without partiality his back would cause him to lose his job and he would have to lay off.

The rule is established in this state that a compensation claimant is not necessarily precluded from recovering compensation by reason of working and earning wages following the date of injury. This rule finds support in the argument and cases cited by appellant under Points Nos. 1 and 2, among which citations is 45 Tex.Jur., pg. 588; Hartford Accident & Indemnity Ins. Co. v. Miller, Tex.Civ.App., 5 S.W.2d 181; Southern Underwriters v. Grimes, Tex. Civ.App., 146 S.W.2d 1058; Texas Emp. Ins. Ass'n v. Mallard, Tex.Civ.App., 192 S.W.2d 302; Traders & General Ins. Co. v. Heath, Tex.Civ.App., 197 S.W.2d 130.

While the evidence in this case strongly suggests that appellee has only suffered partial incapacity, we are unwilling to say that there is no evidence of probative value supporting the finding of the trial court. The trial court evidently felt that although the appellee had continued working since March 5, 1947, that he in truth and in fact is unable to do so, and that he was only pursuing his occupation, in the manner heretofore set out, under the whip of necessity, and that in the event he should lose his present employment where he is favored by his foreman and fellow employees in the performance of his duties, that he would not be able to obtain and retain employment in the line of work which he was accustomed to doing. These being our conclusions it follows that the judgment of the trial court is affirmed.