JENSEN, Respondent, vs. JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY, Appellant.

*April 6—May 4, 1954.*

596

For the appellant there was a brief by *Rieser, Mathys, McNamara & Stafford* of Madison, and oral argument by *Clifford G. Mathys.*

For the respondent there was a brief and oral argument by *Martin M. Morrissey* of Madison.

FAIRCHILD, C. J.   The certificate of insurance held by Mrs. Dora D. Jensen, whose son is the named beneficiary and respondent here, was held by her under a master policy issued to the Blecker Beauty Shops, Inc., by John Hancock Mutual Life Insurance Company.   Because the provisions of the master policy are integrated in the certificate, reference hereinafter will be to the certificate, which appears in its relevant parts in the foregoing statement of facts.   All the material facts are admitted.   From the record it appears

that the effective date of the insurance was July 17, 1948; that the insured became ill and ceased active work on the following September 8, 1948; and that her last premium contribution expired on September 11, 1948. It is also agreed that on or about September 11, 1948, the employer ceased to pay premiums on said certificate in behalf of said employee and so notified the insurance carrier.

Material to this case is the fact that in 1946 an amendment was made to the master policy as originally written in 1943. Prior to 1946 the policy was a noncontributory one. However, after the occurrence of the incident giving rise to *John Hancock Mut. Life Ins. Co. v. Stanley* (Tex. Civ. App.), 215 S. W. (2d) 416, a different policy was issued containing the amendment which required premium contributions from employees, and stipulating as one of the dates upon which the insurance of an employee automatically ceases, *the date of expiration of the period for which the last required contribution was made by such employee* (paragraph (b) of the Termination of Insurance clause of the certificate).

The other date concerned in this case and stipulated in the certificate as the date on which the insurance of the employee ceases automatically appears in paragraph (a) of the Termination of Insurance clause and is the date of termination of employment, which date is expressly defined as being "the date the employee ceased active work." Then follows a qualifying provision which reads: "However, in case the employee ceases active work due to sickness, . . . employment will be deemed to continue thereafter, for the purposes of insurance hereunder, until terminated by the employer either by written notice to the company, or by any other means. . . ." Of these two dates that which occurs earlier is, under the terms of the certificate, the one on which the employee's insurance automatically ceases.

In this case it is agreed that the employee tendered no payments after September 11, 1948. It is also agreed that the employer ceased to pay premiums on her insurance "on or about September 11, 1948," and so notified the insurer. September 11, 1948, then is the date which must be established as that on which the employee's insurance automatically ceased for nonpayment of premiums and is the controlling date in this case.

We are here necessarily concerned with a contract of insurance existing between the insurer and the employee. We must regard such a contract as a deliberate agreement between competent parties, upon a legal consideration, to pay a premium on the part of one and to insure the premium payer on the part of the other, pursuant to the conditions and limitations of the insurance contract agreed to by the two parties. We must also recognize the concurrence of an intention between the two parties. There would be no existing right in favor of the insured or her beneficiary but for the rights granted her in the certificate. The determining factor here is the provision in the insurance contract providing· that the insurance shall automatically cease on the date of expiration of the period for which the last required premium contribution is made by the employee. *Peyton v. Equitable Life Assur. Society,* 159 Pa. Super. 318, 48 Atl. (2d) 145; *Miller v. Travelers Ins. Co.* 143 Pa. Super. 270, 273, 17 Atl. (2d) 907; *Best v. Equitable Life Assur. Society,* 165 Pa. Super. 452, 68 Atl. (2d) 400.

On September 11, 1948, according to contract, the employee had the right to make an additional premium payment to keep her insurance in force until notice was given by her employer to the insurer that her employment had ceased. She did not do this; therefore her insurance ceased automatically on that date. As a matter of fact, the privilege of allowing her to continue payments to the time thus limited would have been of no actual benefit to her as it was

agreed that the employer did notify the insurer "on or about September 11, 1948," that her employment had terminated.

In connection with the paying of additional premiums after September 11, 1948, in order to keep the insurance in force, the respondent urges that the employee's policy matured on the date of her disability and that she was there-fore· no longer required to make premium contributions. This contention ·cannot be maintained. The insurance involved here is designed to grant benefits only in case of death; it does not grant benefits for disability. The policy could not mature until the death of the employee, and respondent cannot avoid *lapse* by creating *maturity*. The policy could, therefore, be kept in force only by continued payment of premiums. When these stopped, the insurance terminated for nonpayment of premiums.

Although termination of employment is not a controlling factor in the final outcome of this appeal, a discussion of such termination arises here because of respondent's contention that employment could terminate only by means of notice to the employee from her employer; and that, such notice having never been given, certain coverage rights began to run from the date of the employee's death. Such an interpre-tation of the contract would make the provision that insur-ance automatically ceases upon payment of the last required contribution dependent upon the accident of when an employer served his employee with formal notice of termina-tion of employment, or whether he did so at all, since respondent eliminates the necessity of paying further pre-miums after disability. It would defeat the whole purpose of the amendment to the policy, which was inserted for the express purpose of avoiding such an incident as arose in the case of *John Hancock Mut. Life Ins. Co. v. Stanley, supra*. The certificate held by the employee is an agreement between her and the insurer only. It cannot compel her

employer to give notice, and if she is injured by his failure to do so, it is a matter for action between her and her employer. It is true that an employer cannot notify an employee of termination of her employment by giving notice of such termination to an insurance company or any third party. But the terms of the contract do not provide that the employee must be notified by her employer in order that her employment be terminated. On the contrary the agreement is that termination of employment shall occur on the date on which the employee *ceased active work*. The modifying provision applicable to an employee who ceases active work because of sickness in no way affects the date of termination of employment. The language used in that modifying provision is definitive of the time up to which the employee is privileged to keep in effect her insurance and the time up to which the insurer is bound by the contract. Since the employer cannot terminate employment by giving notice to an insurance company, the only meaning to be given to the language is the time the employer notifies the insurance company that the employment has been terminated. In this case the employee was apprised by the terms of her certificate that her insurance terminated upon expiration of the last required premium contribution. This condition is independent of any other condition for automatically terminating insurance, and if it occurs prior to the other conditions, it controls.

We have already pointed out the rights of the employee under the termination clause to continue her premium payments on September 11, 1948, for a limited time, *i.e.,* the date on which the Insurance Company was notified that she was no longer employed. Her rights of coverage under the other two clauses, namely, the Extension of Death Benefit in the Event of Total Disability, and the Conversion Privilege, began to run from the date of the termination of employment

as defined in the certificate, which was September 8, 1948. Within thirty-one days from that date the employee had the right to convert to regular life insurance. This she did not do, and there is no serious claim that there was an effort to convert.

It is in connection with coverage under the Extension of Death Benefit in the Event of Total Disability that the date of termination of employment becomes most material in determining the rights of coverage of the employee in this case. There is no question but that the insured was permanently disabled. Appellant concedes that the insured had certain rights under this clause. However, those rights were limited by the terms of the contract, which provide that if proof is furnished within ninety days after death that employment terminated on account of total disability, and that such disability was continuous until the death of the employee, the amount of insurance on the life of the employee at the date of termination of employment will be paid to the beneficiary *provided that death occurred "within a period dating from such termination of employment not longer than the time the employee's insurance had been in force at the date of such termination of employment, but in no event longer than twelve months."* (Emphasis supplied.) The insurance of the employee became effective on July 17, 1948. The date of termination of employment having been established as September 8, 1948, her insurance had been in effect, therefore, fifty-two days—from July 17, 1948, to September 8, 1948—prior to the termination of employment. The Extension of Death Benefit provision extended coverage for another fifty-two days *after* the termination of employment, *i.e.,* from September 8, 1948 to October 30, 1948. If she had died within the period dating from termination of her employment to October 30, 1948, her beneficiary could have benefited from the Extension of Death Benefit coverage. She

did not die within that time. Her death occurred on November 23, 1949, a year and several months after the termination of her employment.

The conclusion of the court below that there was no termination of employment until death terminated it, and that therefore the policy was in full force and effect at the time of the employee's death cannot be sustained. As said in the *Peyton Case, supra,* we consider that the determining factor here is the policy provision requiring payment by an employee of a monthly contribution in advance as a condition precedent to insurance coverage.

The present case turns on the question of nonpayment of premiums, and those cases cited by respondent involving dissimilar policies and different issues are of little weight in determining the issue here. Cases cited involving the John Hancock Mutual Life Insurance Company are cases occurring before the amendment of the policy involved here and are therefore not analogous to this case. Other cases involve policies containing express disability clauses and policies issued under "works agreements." The present policy is strictly a life insurance policy. It matures only on death, and it provides that the insurance shall cease upon nonpayment of premiums.

*By the Court.*—Judgment reversed.