Clara E. LIKENS, Appellant,

v.

JOHN HANCOCK MUTUAL LIFE IN-
SURANCE COMPANY, a foreign
corporation, Appellee.

No. 5538.

United States Court of Appeals
Tenth Circuit.

July 24, 1957.

Rehearing Denied Aug. 24, 1957.

Sam W. Moore, Oklahoma City, Okl. (Forest N. Simon, Oklahoma City, Okl., was with him on the brief), for appellant.

Ben L. Burdick, Oklahoma City, Okl. (Embry, Crowe, Tolbert, Boxley & Johnson, Oklahoma City, Okl., were with him on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

The question presented by this appeal is whether on the date of his death, November 15, 1954, John S. Likens was

covered by a group insurance policy issued to Liebmann Properties by the John Hancock Mutual Life Insurance Company on the lives of Liebmann's eligible employees. The trial court held that the Likens policy had lapsed and that there was no liability.

The insurance company issued to Liebmann a master policy of group insurance covering Liebmann's employees. Under the policy Liebmann was required to pay monthly in advance to the insurance company the premiums of all policies of the employees who had made application for insurance thereunder. Liebmann was required to furnish the company on forms prepared by it the names of all employees who made written application for insurance thereunder, the names of all employees who ceased to make required contribution of premiums, and the names of all employees whose employment was terminated.

The policy provided that " * * * if the employees are to contribute toward the premium, the Master Policy will not be effective until at least seventy-five per cent of all eligible employees have made written application on the prescribed forms of the Company for insurance thereunder, * * *" It contained another provision providing that the employees' coverage would be automatically discontinued "when he fails to make the required contribution for his insurance to the Employer, or when his employment with the Employer shall terminate; * * *"

Under arrangements between Liebmann and its employees, Liebmann paid two-thirds of the premium due under their individual policies and required them to pay the remaining one-third of the premium. Likens' part of the premium on the amount of insurance he had was about $3.94 per month. Although a deduction from his salary was authorized by Likens, Liebmann made no deduction from his salary for the contribution required of him. In August, 1954, the Office Manager sent a memo to Likens' immediate employer, calling attention to the amount due from Likens

in the sum of $35.46 which Liebmann had paid. The memo stated that his premiums had been paid each month by the Company but no deductions had been made on the payroll; that if he wanted to keep his insurance he must pay the past due premiums and start taking out $3.94 each month on the payroll, and if he did not want the insurance he would be dropped from the policy. As a result of a notification on the return memorandum, the company was advised on a form provided for that purpose that Likens' insurance was cancelled as of October 1, 1954, at the request of the policyholder. This notification was dated October 23, 1954, and was received by the insurance company on October 26. At that time the invoice for November was being prepared and as thereafter submitted to Liebmann contained the monthly premium charge for Likens' policy for the month of November. Liebmann paid the invoice including Likens' premium for the month of November. Thus, Liebmann, although notifying the company on October 23, 1954, that Likens' policy was terminated as of October 1, 1954, nonetheless thereafter, upon receipt of the invoice, paid the monthly payment for November. Likens died November 15, 1954, after the payment for his November premium had been received by the insurance company.

There is much to the argument that the advancements made by Liebmann of the monthly sums due from Likens created a creditor-debtor relationship. Likens authorized Liebmann to withhold from his monthly pay check the amount of such monthly contributions. Instead of doing this, Liebmann chose to advance these sums. This continued until in August when Liebmann had advanced the sum of $35.46. At that point the office manager sent a memorandum to Likens' immediate employer calling "attention to insurance premiums *due* from Likens in the amount of $35.46." This memo stated his contribution had been paid each month by the company but no deduction had been made on the payroll;

that if he wanted to keep the insurance he must pay the past due premiums (to Liebmann) and start taking $3.94 each month out of his wages. This tends to support the contention that Liebmann considered Likens indebted to it for the sum of $35.46. Under such a theory, the insurance premiums were paid, the policy was not in default, the company had its money, and Liebmann had a claim against Likens for what he owed him. The decision need not, however, be rested on this ground.

While the group insurance policy was for the benefit of employees, it was nonetheless a contract between Liebmann and the company, under which the company looked alone to Liebmann for the premiums. The obligation to pay all premiums rested upon it alone. Under this contract, the employees were under no duty to pay any premium to the company. Whether they were required to make contributions was a matter entirely between the employer and its employees. The employer could, as he did, require a contribution from the employees but was not required to do so.

Under the plan, Liebmann was required to furnish to the company on forms prepared by it a list of the employees covered and the amount of insurance carried by each of them. This was to enable the company to prepare monthly invoices to Liebmann of the amount of premiums due from it. The company was also notified on forms furnished by it of employees who were added to the list of insured employees, as well as those who ceased their coverage by leaving the company or failing to make their contributions to the employer. This modus operandi enabled the company to keep correct records of the amount of insurance in force from time to time of employees having insurance in force, and to prepare monthly invoices to Liebmann of the amount it owed the company.

The provision of the policy providing that when an insured employee "fails to make the required contributions for his insurance to the Employer" his coverage would be automatically terminated came into play only where such contribution was required by an arrangement between the employer and the employee. If such a situation arose, all the employer had to do was to omit the name of such employee from the list sent to the company. It in turn omitted the amount due from the invoice sent to the employer and in that event, without more on the part of the company, the insurance automatically terminated. If it should happen that the company did not receive the notification with respect to such an employee before sending the monthly invoice and included the premium for his policy therein, all the employer had to do was to omit that amount from his remittance and call the company's attention to the fact that such an employee had not made a contribution and therefore carried no insurance.

When Liebmann received the November invoice listing Likens as an insured employee and listing the amount due on his policy, it knew that Likens had paid no contribution whatsoever. It had notified the company to that effect on October 23. The company on the other hand, when it sent the invoice on the 26th of October, had in its files the notification of Liebmann that Likens' policy was cancelled as of October 1. Notwithstanding, it kept the premium which it received from Liebmann for Likens' insurance. It did not offer to return the premium to Liebmann until after it was notified of Likens' death on November 15, and then it credited Liebmann only with the October payment and retained the November payment.

 This then is the factual situation. When the company was notified that Likens had died on November 15, it had received, retained, and had in its possession the October and November premium payments on his policy. The right of the beneficiary under the certificate became fixed upon the death of

1. City Nat. Bank of Lawton v. Lewis, 73 Okl. 329, 176 P. 237.

the insured[1] and could not thereafter be altered by voluntary acts on the part of either Liebmann or the company. Whether Liebmann could, after Likens' death, have demanded the return of the premiums for October and November on the ground that they had been paid by mistake need not be considered because no such demand was made. In fact, Liebmann seems to have concluded that the policy was in force because it notified the company of Likens' death, something that would have been unnecessary if the policy had terminated as of October 1. Under the admitted facts of the case, we are of the view that the company is estopped to assert that the insurance had automatically expired prior to Likens' death, assuming that the mere failure of the insured to make his contribution to the employer gave it such right. It retained the October premium for approximately thirty days after it had received notice of Likens' death and then voluntarily and without demand by Liebmann gave it credit for one month's premium adjustment which Liebmann refused to accept, but did thereafter accept in the following January. The November payment in its possession at the time it made the adjustment for October was retained by the company until April 1 of the following year, when by check of that date it paid the amount of such premium to Liebmann. Significant is the fact that at that time the company had been sued and had pending against it this suit by the beneficiary for the amount of this policy. We, therefore, conclude that under the undisputed facts, as outlined above, the company was estopped to deny liability on the policy.[2]

The company relies upon McDaniel v. Equitable Life Assurance Society of the United States, La.App., 166 So. 889, to sustain its contention that the payment by the employer of that portion of the premium required from Likens did not continue the policy in force. It is true that in the McDaniel case, as here, the employer on the first of the month advanced the portion of the premium due from the employee, and that it was not deducted from his pay check. But the reason the court held that the policy automatically terminated was that the employee had left the employment of the company and hence under a provision in the policy, when he left, the policy automatically came to an end. So also the insurance company relies upon Nelson v. Aetna Life Insurance Company, 115 Pa.Super. 15, 174 A. 624; Peyton v. Equitable Life Assurance Society, 159 Pa.Super. 318, 48 A.2d 145; Best v. Equitable Life Assurance Society, 165 Pa.Super. 452, 68 A.2d 400; Jensen v. John Hancock Mutual Life Insurance Company, 266 Wis. 595, 64 N.W.2d 183, in support of its position. But in none of those cases did the employer pay to the insurance company the portion of the premium required from the insured employee. Obviously under those facts there could be no question of estoppel and by the very terms of the language the policy would automatically come to an end, because the company had not received the premium necessary to keep it in force.

Reversed and remanded.

MURRAH, Circuit Judge (dissenting).

I agree that employer, Liebmann, advanced the required monthly insurance premiums for employee, Likens, until October 1, 1954, for which Likens became indebted to his employer in the sum of $35.46. Indeed, all parties seem to agree that the insurance was in force until that time. But Liebmann was certainly under no obligation to advance these premiums, and prior to October 1, notified Likens of its intention not to advance any further premiums, stating that if he wanted his insurance kept in force, he must pay the past due premiums and start deducting the future

---

2. For comparison, see United States Fidelity & Guaranty Co. v. Craig County Bank, 10 Cir., 227 F.2d 799; Security Insurance Company of New Haven v. White, 10 Cir., 236 F.2d 215.

premiums from his payroll. Liebmann accordingly notified the insurance company on October 23, on a prescribed form, that Likens' insurance was canceled as of October 1, 1954 "at the request of the policyholder."

Likens terminated his employment with Liebmann on November 1. The premiums for the months of October and November were inadvertently paid by Liebmann after formal notice of cancellation; the insured did not rely upon them and the insurance company is therefore not estopped from asserting the formal termination of the policy. The refund of premiums after cancellation was a matter solely between the employer and the insurance company, in which the employee had no interest or knowledge.

I would hold that the policy was automatically canceled on October 1, 1954 by the employer in accordance with its terms by formal notice, with knowledge of the insured and that the subsequent payment of the premium did not operate to continue the insurance in force thereafter.