## CITY NAT. BANK OF LAWTON v. LEWIS et al.

No. 9426—Opinion Filed Oct. 1, 1918.

Rehearing Denied Nov. 19, 1918.

(176 Pac. 237.)

1. Insurance — Life Insurance — Rights of Beneficiary—Assignment of Policy.

Where a life insurance policy gave the insured the right to change the beneficiary in writing, and providing that a change should take place upon the indorsement of the same on the policy by the insurer, and providing that any assignment must be made in duplicate on blanks furnished by the insurer, both copies of which, with the policy, should be sent to the home office, one of the copies to be there filed, after which the policy should be returned, held, that such policy could not be verbally assigned to secure a loan, so as to affect the beneficiary's right.

2. Same—Rights of Beneficiary.

Where a life insurance policy does not give the insured the right to change the policy, a beneficiary acquires an immediate vested interest upon its issuance and delivery; but where the right to change the beneficiary is reserved to the insured, the beneficiary does not acquire a vested interest until the death of the insured, and when such right attaches the beneficiary is entitled to the possession of the policy, provided the beneficiary has not been changed in the manner provided by the policy.

3. Same—"Change of Beneficiary"—"Pledge" —"Assignment."

Where a life insurance policy giving the

insured the right to change the beneficiary, and providing, among other things, that such change should be indorsed on the policy by the insurer, is left by the insured with a bank, with the verbal statement that "he wanted to leave that policy in the bank as security for anything he might owe the bank at that time or anything he might owe the bank in the future," held, that such transaction did not amount to a change of the beneficiary nor an assignment, but merely a pledge.

**4. Pledges—Forfeiture of Lien—Surrender of Possession.**

Where one claims a lien by reason of a pledge, such lien is forfeited by voluntarily surrendering possession of the pledged property to one claiming possession thereof.

(Syllabus by Springer, C.)

Error from District Court, Comanche County; Cham Jones, Judge.

Suit by the City National Bank of Lawton against Martha A. Lewis and the Federal Life Insurance Company. Judgment on a verdict for defendants, and plaintiff brings error. Affirmed.

John M. Young and Johnson & Stevens, for plaintiff in error.

Chas. Mitschrich and B. O. Young, for defendants in error.

Opinion by SPRINGER, C. The parties will be referred to as plaintiff and defendants as they appeared in the lower court.

The plaintiff instituted this suit against the defendants for the purpose of impressing the proceeds of a settlement of certain life insurance policies made by the defendant Martha A. Lewis, with her codefendant, the Federal Life Insurance Company, with what is designated an equitable assignment.

The facts disclosed by the record show that M. V. Lewis died on December 17, 1914. At the time of his death he was the holder of three life insurance policies on his life, one of which was for $2,500, and the other two were $10,000 each. The defendant Martha A. Lewis was the beneficiary named in each of the policies. The two policies, of $10,000 each, contained a provision creating double liability in case of death by accident.

During his lifetime M. V. Lewis was indebted to the plaintiff bank in the sum of $3,141, and which was owing the bank at the time of his death. After his death the plaintiff bank claimed to hold one of the $10 000 policies as collateral security for the indebtedness of M. V. Lewis, claiming that the same had been voluntarily delivered to the president of the bank by Lewis on February 7, 1914, as collateral security for such debt. No written assignment of the policy whatever was ever made by Lewis, and no written instrument of any kind bearing the signature of Mr. Lewis in support of the contention of the bank was ever executed or delivered to it or agreed to be so executed or delivered.

At the time of his death, M. V. Lewis was a customer of the bank and had a safety deposit box in the bank's vault. After the injury from which he died, and before his death, he requested English, president of the bank, to see that a note for about $400 given by himself in payment of the premium on one of the $10,000 policies was paid. The bank paid the note, and was subsequently reimbursed for the amount thereof by Martha A. Lewis.

It appears from the evidence that, at the time this transaction took place between the president of the bank and M. V. Lewis, the former was at the home of the latter, and English asked for the key to the safety deposit box of M. V. Lewis, and the same was taken out of his pocket and delivered as requested. Just why English should have asked for the key to the safety deposit box of M. V. Lewis is a matter of some conjecture, in view of the fact the record does not disclose by the testimony of any witness why it was necessary for English to have the possession of the key to the safety deposit box of Lewis for the execution of any business matters requested of English by Mr. Lewis.

By reason of her beneficial interest in the policies after the death of M. V. Lewis the defendant Martha A. Lewis was negotiating with her codefendant for a settlement of her several claims, when it became necessary to have the policies before concluding the settlement. She sent her daughter, a Mrs. Bowman, to the bank for the purpose of getting all of the policies. Upon opening the safety deposit box one of the $10,000 policies was missing, and Mrs. Bowman requested Mr. English for the policy, and he told her that the bank claimed the other $10 000 policy, but finally delivered it to her as requested. English says she promised to return it, but she flatly denies having told English that she would return it, but says that she made no answer to his request. Mrs. Bowman delivered all three policies to Martha A. Lewis, but did not tell her about the claim of the bank. Mrs. Lewis, being unaware of any claim of the bank, made settlement with her codefendant, by the terms of which it paid her $2,500 in cash, and agreed to pay $25,000 additional in

equal monthly installments of $200 until the full amount paid should equal $27,500. This settlement between Martha A. Lewis and her codefendant was effective April 22, 1915, and on the same day Mrs. Lewis surrendered to the insurance company the three policies.

The beneficiary named in each of the policies of insurance had never been changed up to the time of the death of Mr. Lewis, the only claim of the bank being that it is entitled to recover against the defendants by reason of an alleged oral assignment. The alleged question of oral assignment was made an issue by the pleadings. The trial was to the court and a jury, which returned a verdict in favor of the defendants, and judgment was rendered in accordance with the verdict of the jury.

The appeal here is to reverse the judgment of the lower court, the main contention being that the court erred in its conclusion of law and not rendering judgment in favor of the plaintiff.

The several policies contained the following provisions:

"This policy is issued with the express understanding that the insured may, provided it has not been assigned, change the beneficiary or beneficiaries at any time during the continuance hereof by filing with the company a written request, duly acknowledged, accompanied by this policy, such change to take place upon the indorsement of the same hereon by the company. Without the consent of the beneficiary, the insured may receive every benefit, exercise every right, and enjoy every privilege conferred on him by this policy."

And:

"Any assignment hereof must be made in duplicate on blanks furnished by the company. Both copies, with this policy, must be sent to the home office, one of the copies to be there filed, after which the policy will be returned. The claim of any assignee shall be subject to proof of interest, the company assuming no responsibility for the validity of an assignment."

The testimony of F. M. English was as follows:

"Direct Examination.

"Q. Did you see M. V. Lewis some time about the fore part of February, 1914? A. Yes, sir; I saw Mr. Lewis very often.

"Q. Did you see him about that time on an occasion when he left anything with you? A. I did.

"Q. What did he leave with you and when? A. He left with me a life insurance policy, on the 7th day of February, 1914.

"Q. When he left that policy with you what did he say to you? A. He told me he wanted to leave that policy in the bank as security for anything he might owe the bank at that time or anything he might owe the bank in the future.

"Q. What did you do with that policy at that time? A. I put it in an envelope, as is my custom, with such paper, wrote his name on the end of it, and dated it with a stamp that I have on my desk, and took it to the vault of the bank, and put it in the collateral security of the bank.

"Q. I will ask you to state what, if any, memorandum you made upon that envelope at the time the policy was delivered to you? A. I wrote his name and date on the envelope. * * *

"Q. After you wrote his name on the envelope, and placed the date there, what did you do with the policy then? A. Took it around and put it in the collateral securities of the bank.

"Q. What policy was that? A. It was a policy in the Federal Life Insurance Company for ten thousand dollars on the life of Martin V. Lewis.

"Cross-Examination.

"Q. Did Mr. Lewis not have a safety deposit box in your bank? A. He had a box; yes, sir.

"Q. Did the bank take any written assignment of this policy? A. No, sir.

"Q. Did you take any written memoranda that you had it for security? A. Only the memorandum on the back of the envelope.

"Q. I mean that Lewis signed? A. No, sir."

The several policies contained a clause stating the manner and method by which a change of beneficiary might be made. The policy gave to the insured the right to change the beneficiary at any time during the continuance thereof, by filing with the company a written request, duly acknowledged, accompanied by the policy, such change to take place upon the indorsement thereof by the company.

The policy also contained the provision that any assignment of the same should be made on duplicate blanks furnished by the company. It contained the further provision that both copies, with the policy, should be sent to the home office, and that one of the copies should be retained there on file, and the policy should be returned to the insured.

It is the contention of the defendants that a valid assignment of the insurance policy could not be made except in the manner provided in the policy. In support of this contention we are referred to the case of Mul-

ler v. Pennylvania Mutual Life Insurance Co., 62 Colo. 245, 161 Pac. 148, which holds:

"Where the policy gave the insured the right to change the beneficiary in writing, providing that a change should be valid only if indorsed on the policy by the insurer at the home office, and that any assignment should be furnished the insurer and attached to the policy, a simple assignment as collateral to secure a loan, not sent to the insurer, did not affect the beneficiary's right, which could be changed only by compliance with the terms of the policy."

In the case just quoted the following provisions were in the policy of insurance:

"The right of revocation is reserved by the insured. When the right has been reserved, the insured shall have full power while this policy is in force (subject to any previous assignment) to change the present beneficiary or beneficiaries. Such change shall be made in writing, and shall be valid only upon its indorsement on this policy by the company at the home office."

Also the following:

"Any assignment of this policy shall be furnished to the company and a duplicate thereof attached hereto. Any claim against the company, arising under any assignment of this policy, shall be subject to proof of interest. No assignment shall impose any obligation on this company until it has received the original thereof, nor does the company guarantee the sufficiency or validity of any assignment."

If the testimony of English is true, the policy was delivered to him by Mr. Lewis, and the bank therefore became chargeable with notice of the requirements of the policy with reference to assignment. We must hold that, where a life insurance policy contains a provision setting forth the method and manner and the steps necessary to be taken to change the beneficiary, such provision is controlling, and that a valid assignment of the policy cannot be made, except as provided in the policy itself. Where an insurance policy does not confer the right upon the insured to change the beneficiary, such beneficiary has a vested right in the policy immediately upon its execution and delivery. If, however, the policy contains a provision reserving the right in the insured to change the beneficiary, the beneficiary named therein does not acquire a vested interest in the policy until a condition arises which makes it payable.

The rights of the beneficiary named in the policy which it is claimed was left with the bank became vested immediately upon the death of the insured. Supreme Lodge of Fraternal Brotherhood v. Price, 27 Cal. App.

607, 150 Pac. 807. There having been no valid assignment of the policy, the beneficiary was entitled to the immediate possession thereof when her rights became vested.

The most favorable view to take of the transaction between Mr. Lewis and the plaintiff is that, under the circumstances here disclosed, Mr. Lewis did not, by the alleged assignment, make any change of beneficiary or do anything more than deliver possession of the policy to the bank. The alleged assignment was not in fact an assignment at all, and amounted to nothing more nor less than a pledge, if that.

A pledge is distinguished from an assignment in that an essential feature of a pledge is a transfer of the possession, while an essential feature of an assignment is the transfer of title.

The various sections of Rev. Laws 1910 controlling in the case before us, are:

"3826. Contracts of mortgage and pledge are subject to all the provisions of this chapter."

"3831. Notwithstanding an agreement to the contrary, a lien or a contract for a lien transfers no title to the property subject to the lien."

"3846. The voluntary restoration of property to its owner, by the holder of a lien thereon, dependent upon possession, extinguishes the lien as to such property, unless otherwise agreed by the parties, and extinguishes it, notwithstanding any such agreement, as to creditors of the owner and persons subsequently acquiring title to the property, or a lien thereon, in good faith and for a good consideration."

"4500. Pledge is a deposit of personal property by way of security for the performance of another act."

"4502. The lien of a pledge is dependent on possession, and no pledge is valid until the property pledged is delivered to the pledgee, or to a pledgeholder, as hereafter prescribed."

It is thus seen that the lien of the pledgee is dependent on possession, and the instant one permits pledged property to be voluntarily surrendered into the custody and possession of one claiming the right to the possession thereof he thereby forfeits his right to claim a lien on the property. Clark v. Iselin, 21 Wall. 360, 22 L. Ed. 568.

This was the view of the lower court at the time it rendered judgment in favor of the defendants, and, finding no error therein, the judgment of the lower court is affirmed.

By the Court: It is so ordered.