FIRST STATE BANK OF AUDUBON, IOWA, v. COLLINS-DIETZ-MORRIS CO.

No. 28774. Jan. 14, 1941.

Rehearing Denied Jan. 20, 1942.

Application for Leave to File Second Petition for Rehearing Denied April 7, 1942.

*123 P. 2d 957.*

410

Robert E. Lee and Ed Bynum, both of Oklahoma City, for plaintiff in error.

Chandler, Shelton, Fowler & Swinford and Edgar S. Vaught, Jr., all of Oklahoma City, for defendant in error.

DAVISON, J. This action was instituted in the trial court by plaintiff in error, as plaintiff, against the defendant in error, as defendant. Said cause was tried without the intervention of a jury and resulted in judgment wherein a claim asserted by the defendant was upheld as a set-off against the plaintiff's claim, and the only recovery decreed was in favor of the defendant for its costs. The plaintiff has perfected this appeal, asserting that said judgment is erroneous.

The parties will hereinafter be referred to as they appeared in the trial court, except where the plaintiff is designated merely as "the bank."

The recovery plaintiff sought from defendant was the sum of $1,409.50 alleged to be due on account of 1,100 cases of Standard Iowa Evergreen corn it claimed to have sold and delivered to the defendant on or about August 1, 1936.

The defendant denied owing plaintiff any sum whatsoever, and alleged that on or about June 23, 1936, it had contracted to buy from the Audubon Canning Company of Audubon, Iowa, through the latter's Oklahoma City broker, Russell Brokerage Company, 3,300 cases of canned corn of the same kind specified in plaintiff's pleadings, with defendant's labels on said cans, at a price of 65c per dozen cans, f. o. b. Audubon, Iowa. Briefly stated, the substance of other facts alleged in defense of the action were that under the terms of the sale, the canning company was to ship the corn to the defendant not later than August 1, 1936, but the 1,100 cases described in plaintiff's pleadings were all that were shipped and by reason thereof defendant had been damaged to the extent of the difference between the contract price and the market price on August 1, 1936, of 2,200 cases of such corn. Said sum was alleged to be $1,540 and asserted as a set-off against the sum for which plaintiff sought judgment.

Plaintiff did not attempt to establish any express contract with the defendant and does not deny the latter's claim to a cause of action against the Audubon Canning Company for breach of contract, but it urges that same has no proper place in this action, and that whatever damage defendant may have sustained by reason thereof should not have been decreed to be a set-off against its recovery from the defendant. The plaintiff does not claim to have ever owned the cans of corn for which it seeks payment, but its theory seems to be that having had possession of same as the pledgee of Audubon Canning Company and having enabled defendant to obtain the merchandise by shipping same to the latter, and forwarding it a bill of lading in which said bank was named as the consignor thereof, as well as an invoice directing remittance to itself therefor, that, as between said bank and the defendant, the bank was entitled to payment for the corn, re-

gardless of and without the intervention of any rights which the defendant may have had against the canning company. The defendant concedes that at one time the bank may have had a valid pledgee's lien on said corn, but insists that such a fact, under the circumstances of this case, is not decisive of the issues presented.

The transaction through which the bank claims to have obtained a pledgee's lien upon the 1,100 cases of corn appears to have occurred several months or more prior to the time the contract between the defendant and the canning company was entered into. It appears that in transacting its business over a period of years a fluctuating indebtedness of several thousand dollars had accumulated in the canning company's account with the bank. To secure said debt the company had pledged its canned stock, and the canned corn in question was a part of said security. To vitalize the pledge, the debtor had relinquished possession of the canned goods by storing it with a company called the Douglass-Guardian Warehouse Corporation and delivering the warehouse receipts therefor to the bank. After accepting the defendant's order for 3,300 cases of the corn, which besides specifying shipment on August 1st, also provided for labeling of the cans before shipment with labels furnished by the defendant, Roy Chard, sole owner of the canning company, found that his company had accepted more orders for corn, identically the same as that ordered by the defendant, than it could fill, and communicated this fact to the defendant through Russell Brokerage Company, together with an expression of willingness to immediately ship one car containing 1,100 cases, if desired. The defendant's desire to receive the one car (constituting a part performance of the pre-existing contract) was promptly communicated to Chard, who then made arrangements to prepare the cans of corn for shipment. With the consent and approval of the bank he obtained them from the warehouse; using his labeling machine, labeled same with defendant's

labels, and on July 29, 1936, loaded them into car No. 152762 of the Rock Island Railroad Company at Audubon for transportation to the defendant at Oklahoma City. The shipment was made on an "open" or straight bill of lading, naming the plaintiff bank as consignor, which, with an invoice directing that payment for the corn be made to the bank, was enclosed in a letter Chard mailed to the defendant on July 30th. The letter, with enclosures, was received by the defendant about August 1st. The car of canned corn was unloaded into the defendant's warehouse in Oklahoma City on August 5th, and, in due course, the defendant paid the freight charges thereon. Part performance of a contract did not relieve the company of its duty to fully perform. Upon defendant's refusal to pay for the corn without compensation for the damages it claimed by reason of the canning company's breach of its contract to ship 3,300 rather than 1,100 cases of the corn, plaintiff commenced this action.

Counsel for the plaintiff refute their opponent's theory that when the bank relinquished its possession of the canned corn in question it lost its pledgee's lien thereon with the contention that the bank's release or return of the corn to Audubon Canning Company was for "the special, temporary, and limited purpose" of allowing the latter to place the defendant's labels thereon and load same for shipment. To show that such a surrender of possession does not extinguish the lien they cite expressions from 49 C. J. pg. 935, sec. 75 (b); Fletcher American National Bank v. Federal Securities Co. (Ind. App.) 168 N. E. 599, and Lippman v. Ross et al. (Wash.) 226 P. 1017. We find it unnecessary to discuss in detail the arguments and authorities presented upon this proposition because of the sparsity of direct evidence in the record concerning the purpose for which the bank surrendered to Audubon Canning Company the constructive possession of the corn (it had once held through warehouse receipts) before same was shipped to the defendant. There is proof of circum-

stances which might be deemed sufficient evidence to support a conclusion on this subject, but the matter seems to still rest largely secluded within the minds, knowledge, and intent of the owner of the canning company and the officials of the bank who, co-operating with each other, arranged for the release.

We find a much more stable and unequivocal basis for a decision of the controversy in other argument presented.

It is asserted on behalf of the defendant that even though, unbeknown to it, the bank had a valid and subsisting pledgee's lien on the canned goods before title thereto was transferred to defendant, since the latter took the same without notice of said lien, it was a bona fide purchaser and the bank's lien did not follow the goods into its possession. We think this proposition is supported both by the evidence in this case and the law applicable to the situation presented. In so concluding, we reject the third proposition relied upon by the plaintiff, namely, that: "Defendant's receipt of the bill of lading and invoice naming plaintiff as shipper and seller respectively several days before the receipt of the shipment, constituted notice to defendant of the plaintiff's rights. * * *" The answer to this, as stated by opposing counsel, is that the possession of the carload of canned corn had already passed to the defendant upon its delivery to its agent, the railroad company, July 29th (the day before the bill of lading and invoice were mailed to the defendant) pursuant to the terms of the sale (65c per doz., "f. o. b." Audubon, Iowa) from the Audubon Canning Company to the defendant. The delivery of goods by a consignor to a common carrier for account of a consignee has the effect of delivery to such consignee. B. Kuppenheimer & Co. v. Levine et al., 116 Okla. 50, 243 P. 182; Garrison Coal Co. v. Semple, 82 Okla. 60, 198 P. 497, citing U. S. v. Andrews, 207 U. S. 229, 28 S. Ct. 100, 52 L. Ed. 185. Thus, regardless of whether the bank had ever relinquished its possession and lost its lien, as between it and the Audubon Canning Company prior to July 29th, it did on that date relinquish to the defendant whatever possession it may have previously had. This, and that the defendant had received no notice prior to said date of any claim of the bank in or to said corn, are undisputed facts in the case. "The lien of a pledge is dependent on possession. * * *" (sec. 11695, O. S. 1931, 55 Okla. St. Ann. § 3); and though our statute (sec. 10959, O. S. 1931, 42 Okla. St. Ann. § 25) does not specifically provide for a situation identical with the present one, there is an abundance of precedent supporting the principle that the holder of a lien on property who permits it to be sold to a bona fide purchaser without notice of his claim thereon either waives said lien or is estopped to assert it as to such purchaser. See Ashcraft v. Butts, 185 Okla. 587, 95 P. 2d 107; Howell v. Board, 185 Okla. 513, 94 P. 2d 830; Farmers State Bank of Alva v. Kavanaugh & Shea, 98 Okla. 119, 224 P. 525; as to pledge liens, consider City Nat. Bank of Lawton v. Lewis et al., 73 Okla. 329, 176 P. 237; First Nat. Bank of Hartshorne v. Neil P. Anderson & Co., 90 Okla. 145, 216 P. 111; and Schumann v. Bank of Calif. Natl. Ass'n (Ore.) 233 P. 860.

The fourth proposition stated in plaintiff's brief is as follows:

"The acceptance of the shipment by defendant after it had notice of plaintiff's right, title and interest therein obligated it to pay plaintiff the invoice price."

Neither the proposition nor the authorities cited in support thereof are applicable to the case at bar. We deem it unnecessary to treat them at length. This is not a case where, in the absence of an express contract, goods are shipped to a prospective purchaser in the hope that he will accept them and thus impliedly agree to pay. Here, the defendant had already bought the goods by contract, and the same was fulfilled to the extent of the carload in question when the latter was delivered to the defendant by delivery to its carrier at the f. o. b. price already agreed upon between said purchaser and Audubon

Canning Company. Counsel for plaintiff argue that conceding the defendant to have obtained title to the goods upon delivery to the railroad company (Roth v. Roach, 115 Okla. 199, 242 P. 201) yet it took no better title than its vendor had and the bank's rights survived the transfer, the defendant taking the corn subject to any prior existing equities in favor of the bank. There are no "equities" in favor of the bank against a bona fide purchaser without notice. The defendant is blameless in the matter, while the plaintiff has contributed to the loss of its own lien by facilitating the transfer of the corn to the defendant without notice to the latter of its lien claim. (See cases digested under Estoppel, Key No. 72, vol. 6, Okla. Digest.) There is no question but that the bank, through the co-operation of its officials with Chard, the owner of the canning company, made the corn in question available for shipment to the defendant, thus assisting him in partially performing his contract with the latter. The damages to the defendant accrued from a breach of the same contract, and it is the price therein specified that plaintiff seeks to collect. It made no effort to substantiate a recovery on a quantum meruit basis. As far as the record shows, it sought neither the market value of the corn on the day it was consigned nor the day that it arrived (which defendant proved was $1 rather than 65c per doz.). In the situation here presented we are of the opinion that the trial court correctly allowed the defendant a set-off for its damages against the plaintiff's claim, and its judgment is hereby affirmed.

WELCH, C. J., CORN, V. C. J., and OSBORN, BAYLESS, and HURST, JJ., concur. RILEY, GIBSON, and ARNOLD, JJ., dissent.