**Dorothy Jean KING, Plaintiff in Error,**

**v.**

**Arch King VINEYARD, as Administratrix of the Estate of Sewell Laster King, Deceased, Defendant in Error.**

**No. 42362.**

Court of Appeals of Oklahoma, Division No. 81.

May 5, 1970.

Rehearing Denied Sept. 25, 1970.

Robert H. Sherman, Oklahoma City, for plaintiff in error.

Oden, Oden & Derryberry, Altus, for defendant in error.

WILLIAMS, Judge.

In her petition filed below, plaintiff in error, Dorothy Jean King, hereinafter referred to as plaintiff, alleged that Standard Life and Accident Company, hereinafter referred to as Insurer, issued its policy of insurance on the life of Sewell Laster King in the sum of $4,000 effective July 1, 1958; that on November 6, 1959 the insured executed a change of beneficiary agreement which was approved by the Insurer making plaintiff the beneficiary, and that the insured was killed on October 29, 1964. Plaintiff alleges that she is entitled to the proceeds of the policy but that defendant in error, Arch King Vineyard, as Adminis-

tratrix of the estate of Sewell Laster King, deceased, hereinafter referred to as Administratrix, is making some claim thereto, and plaintiff prayed that the court decree Administratrix had no claim or interest therein and that plaintiff is entitled thereto.

The answer of Insurer, as one of the defendants, admitted the filing of change of beneficiary agreement by the insured, Sewell Laster King, and its approval by Insurer; that insured was accidentally killed and Insurer owed the $4,000 and wishes to pay it to the proper party. It tendered such sum and asked the Court to determine whether plaintiff or Administratrix is the proper and only recipient and asked to be discharged.

Administratrix by her answer and cross petition alleged that the policy of insurance was procured by the insured pursuant to an agreement between insured and Administratrix, and her brothers and sisters, whereby they would guarantee the payment of the premiums thereon and insured was to make and keep his estate as the beneficiary thereof so that the proceeds thereof would be available to repay them money previously loaned by them to him and to have money available to pay for his last illness, funeral expenses and other obligations of his estate in the event of his death. Administratrix further alleged that pursuant thereto insured delivered the original insurance certificate to Administratrix and that it remained in the actual or constructive possession of Administratrix until his death; that by reason of these facts Administratrix and her brothers and sisters acquired a vested interest in said insurance policy, and Administratrix asked the Court to decree that Insurer be ordered to pay the $4,000 to her as Administratrix of the estate of the insured.

Trial before the Court resulted in judgment in favor of Administratrix and plaintiff appealed.

For reversal plaintiff contends the judgment of the trial court is not supported by the evidence, and asks the appeal court to reverse the trial court and order the proceeds of the policy paid to plaintiff.

Much of the evidence is undisputed. Plaintiff and the insured were married in March 1955. He was an employee of Groendyke Transport, Inc. A group life and accident insurance policy was taken out by the Company on its employees with Standard Life, and under date of July 1, 1958 a certificate of insurance on the life of insured was issued to him by Standard Life in which certificate his estate was designated as beneficiary. The master policy was retained by the employer. The certificate contained the following provision:

> The Employee may from time to time change the Beneficiary designated in this Certificate, without notice to or the consent of said Beneficiary, by filing written notice thereof with the Company at its Executive Office, accompanied by this Certificate for endorsement. Such change shall take effect only when endorsed on the Certificate by the Company. If no designated Beneficiary survives the Employee, the amount of insurance hereunder shall be payable to the Insured's Estate.

The certificate stated that the insurance would terminate at the end of the policy month in which his employment with the Company terminated except insured in that event had the privilege of converting to another policy in a form customarily issued by the Insurer, not term insurance, subject to certain restrictions, in an equal amount, without further proof of insurability, upon payment of the required premium.

The certificate contained the further provision:

> Assignment—The insurance and benefits provided by this Policy are non-assignable.

About November 1, 1959 insured executed a change of beneficiary changing the beneficiary of this insurance contract from his estate to his wife, plaintiff herein. The change of beneficiary was executed on

a form furnished by the Insurer pursuant to a telephone request by plaintiff, was executed in accordance with instructions thereon and was approved by the Insurer on November 6, 1959. This change of beneficiary was not attached to the original certificate of insurance, which Administratrix testified was in her possession at that time. However, the change of beneficiary form instructed insured not to send in the policy for endorsement in connection with the change and that the executed change of beneficiary was to be filed with the policy.

Contained in the change of beneficiary agreement executed by insured and appearing immediately above his signature was the following written statement by insured:

I certify that the privilege of changing the beneficiary, conferred upon me in said policy, is not encumbered by any bankruptcy proceedings against me or by any pledge or assignment of said policy for the benefit of creditors or otherwise.

On February 16, 1961 plaintiff and insured were divorced and no mention of the insurance contract was made in the decree. However, no change was thereafter made by insured regarding the beneficiary on said policy and the policy was in effect when insured was accidentally killed on October 29, 1964. The premiums were all paid, one-half by insured's employer and one-half withheld from insured's wages by his employer.

The evidence of Administratrix in support of her answer and cross petition consisted almost entirely of her own testimony. Her testimony regarding the contents of the alleged agreement with the insured under which she claimed a vested interest in the policy was as follows:

Q. State what was said by your brother with reference to this particular policy that he subsequently took out.

A. Well, he said he thought insurance was alright but he wasn't sure he could make the payments on it, that

as long as he was working he felt like he could make them but that he had no assurance that his job was permanent; that he hated to take out insurance and make payments for a while and then loose all the premiums, that he wasn't sure he could make the payments. I told him that in a case like that I would help him, with the understanding that he would have the insurance made out to his estate so that if anything happened to him and he didn't have enough money to pay his hospital bills, his last illness, and funeral expenses, that his brothers and sisters would be protected to that extent.

Q. What did he say when you told him that?

A. He said in a case like that he felt it would be best for him to go ahead and to take out insurance. And I said, "Anytime you cannot pay the premiums, I will pay them for you." When he talked about the insurance, he said it was his understanding that the payments would be taken out of his salary.

With reference to what was said after insured had taken out the policy, she testified as follows:

A. Well, he came in the house. We talked for a few minutes. He had this and another one—a sick and accident policy—with him in an envelope. He handed it to me and said, "Here is this insurance policy we have discussed and I have taken it out in accordance with the agreement I had with you."

Insured was regularly employed throughout all the period from prior to 1958 until his death, at a gross salary of about $600 per month, except for a few months after an operation in 1962.

Administratrix testified that in October 1962 insured was grounded and was advised by his employer he could not work another day until he had an operation; that he came to Altus, where Administra-

trix lived, and the following conversation took place:

A. Well, he said since the doctor told him the insurance was no good, he could not have surgery because he didn't have the money to pay for it.

Q. What did you say?

A. I said, "You don't have any choice. You can't work. You don't have any home. You will have to have surgery because you have got to work for a living."

Q. And what did he say?

A. He said, "Well, I don't have any money to pay for it." I told him, I said, "Well, I do have. If you go ahead and have it done, I will pay for it." He said, "I just don't want to take your money." I said, "Well, I would rather pay you for having surgery than to have to support you the rest of your life." He said, "Alright. In a case like that, if the insurance isn't any good and you pay for it, if anything happens to me, you have got my insurance policy."

Q. That is the particular policy you have there?

A. That's right. He said, "If anything happens to me and after my expenses are paid, you deduct what I owe you and then if there is anything else, divide it between the other brothers and sisters."

In her testimony Administratrix stated that prior to 1958 she had loaned insured "anywhere from $600 to $1,000"; that subsequent to 1958 she had loaned him money to eat on and other money totalling around $700 to $800; also she had paid $300 on insured's funeral bill and there was $300 thereon still unpaid and owing.

Administratrix admitted, on cross examination, that insured's insurance was in fact good; that it had paid him sickness and other benefits during his disability and had paid a substantial portion of the expenses of his operation, but stated that she did pay part of it.

Administratrix testified that she kept possession of the insurance certificate until insured asked for it about December 1962 for the purpose of having it checked for coverage in connection with his operation; that she let him take it for that specific purpose and on condition that he return it. However, he kept it and never did return it. It was found among his papers after his death on October 29, 1964. The change of beneficiary was never endorsed on the certificate itself.

Vena Parchman, sister of Administratrix, also testified but she was not present at the time of the alleged agreement and knew only that Administratrix had possession of the insurance certificate in December 1959.

■ The action of the Insurer, in tendering the proceeds of the policy into court as a stakeholder, served to convert the instant case from one cognizable in law to one cognizable in equity. Welch v. Montgomery, 201 Okl. 289, 205 P.2d 288; Scheibner v. Scheibner, 370 P.2d 555 (Okl.).

The rule to be followed by the Court in weighing the evidence in the instant case is laid down by the Oklahoma Court in Scheibner v. Scheibner, supra, wherein Syllabus No. 1 by the Court reads as follows:

1. Proof of oral assignment of insurance policy must be so clear, cogent and convincing as to leave no reasonable doubt thereof.

In the opinion the Court stated:

It is apparent that it is easy for one to lay claim to an insurance policy as the assignee thereof under an oral assignment and difficult for the owner or beneficiary of the policy to disprove the claim. For said reason, proof of such an assignment must be so cogent, clear and forceful as to leave no reasonable doubt thereof. See Jones et al. v. Tautfest et al., 206 Okl. 380, 243 P.2d 1003, and 57 Am.Jr. "Wills", Sec. 185, p. 163.

The question for determination here is whether or not the evidence of Administratrix satisfies the foregoing rule.

As previously stated, the evidence of Administratrix consists entirely of her own oral testimony, plus the additional testimony of her sister that Administratrix was in possession of the insurance certificate in December 1959. An examination of the testimony regarding the alleged oral agreement between herself and the insured reveals that it contained no mention of any money then owed by insured to Administratrix or her brothers or sisters, or that any such indebtedness was a consideration for any agreement that his estate was to be named the beneficiary in the policy, as claimed by Administratrix in her answer and cross petition. As stated by her in her testimony of the agreement, her obligation thereunder was that if insured lost his job or was unable to pay the premiums on the policy she would do so. The alleged agreement occurred about July 1958. Approximately 16 months later, in November 1959, insured changed the beneficiary under the policy to his wife, plaintiff herein. At the time of the agreement and during this interval Administratrix did nothing under the alleged agreement except she held possession of the certificate. All insurance premiums were paid by insured and his employer. The insurance was term insurance, which would terminate if insured should lose his job under the terms of the policy itself.

As a practical matter we fail to see any real obligation on the part of Administratrix under this alleged agreement, and certainly she was never called upon to execute any performance thereunder prior to the change in the beneficiary.

There were a number of circumstances in the evidence which were inconsistent with the existence of any such oral agreement. The insured was married to plaintiff at the time of the alleged agreement and there is no evidence that a divorce was contemplated by them at the time. As such, plaintiff, as surviving widow of insured

would have first priority to serve as Administratrix of his estate in the event of his death, and as such would be entitled to the proceeds of the policy as written under the alleged agreement. It was not until the divorce, almost three years later, that Administratrix could have received any direct benefit from the alleged agreement. Also, the act of insured in changing the beneficiary, apparently without consulting Administratrix, is inconsistent with such an agreement. In addition, in the written instrument by which insured changed the beneficiary, he specifically stated, in writing, immediately above his signature, that he certified that the privilege of changing the beneficiary conferred on him in the policy, was not encumbered by any " * * * pledge or assignment of said policy for the benefit of creditors or otherwise." Further, is the fact the certificate was found among insured's possessions after his death.

■ We are of the opinion that the evidence upon which Administratrix relies fails to satisfy the rule laid down by Scheibner v. Scheibner, supra, and was insufficient to establish an oral assignment of this insurance policy in favor of Administratrix.

Administratrix cites, and apparently relies to considerable extent on, the Washington case of Sundstrom v. Sundstrom, 15 Wash.2d 103, 129 P.2d 783, wherein the facts therein were held to give rise to an equitable assignment in favor of the wife as against insured's mother. However, a careful reading of that case reveals the agreement therein was fully performed by the party claiming the assignment prior to the attempted change of beneficiary and at the time it was made there was a "present appropriation" amounting to an equitable assignment of the policy, both not present in the instant case.

■ In regard to the claim of Administratrix that at the time of insured's operation in 1962 he told her if his insurance wasn't any good and she had to pay for

the operation, if anything happened to him she had his insurance policy, and her further statement that she paid part of his operation on the basis thereof, it did thereafter in fact develop that the insurance was good; also, this at most would operate only as a pledge of the policy which Administratrix lost when she voluntarily surrendered possession of the policy to insured in December 1962. City National Bank of Lawton v. Lewis, 73 Okl. 329, 176 P. 237.

We do not speculate whether insured's failure to change the beneficiary of this policy, after his divorce, was by design or because he overlooked it, but the Court cannot change the beneficiary for him under the evidence in this case.

The judgment of the trial court is reversed with directions to enter judgment for plaintiff.

Reversed with directions.

DAVISON, P. J., concurs.

MARMADUKE, J., dissents.