# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-10347

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2019

Lyle W. Cayce
Clerk

JACKSON NATIONAL LIFE INSURANCE COMPANY,

> Plaintiff - Appellee

v.

LANCE DOBBINS; L & R CATTLE L.L.C.,

> Defendants - Appellees

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,

> Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:16-CV-854

Before STEWART, Chief Judge, and SOUTHWICK and ENGELHARDT, Circuit Judges.

PER CURIAM:*

In 2015, Larry Dobbins ("Dobbins") died. Now, the correct recipient of his $1 million life insurance policy (the "Policy") is in dispute. Dobbins used the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-10347

Policy as collateral for a loan, assigning the proceeds to the Bank of Union ("Union"). When Dobbins died, he was in default on this loan. Jackson National Insurance Company (the "Insurer" or "Jackson National") brought an interpleader action and sought a judgment from the district court as to which party was entitled to the Policy proceeds.  At issue is whether Dobbins made a valid assignment to Union, and whether the Insurer was entitled to reduce the Policy proceeds pursuant to a misstatement-of-age provision within the Policy. For the reasons stated below, we REVERSE the district court's grant of summary judgment for L & R Cattle, LLC ("L & R") and Lance Dobbins ("Lance"). Additionally, we AFFIRM the district court's grant of summary judgment for Jackson National as to the reduced amount of proceeds payable.

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In 1999, Dobbins applied for a life insurance policy from Valley Forge Life Insurance Company ("Valley Forge") and received a $1 million term life insurance policy. Linda Dobbins was initially designated as the Policy's primary beneficiary, but in 2001, the primary beneficiary was changed to Dobbins Enterprises, which in turn transferred its rights to L & R in 2015. In 2001, Lance was named as a contingent beneficiary.[1] Both Dobbins Enterprises and Lance were revocable beneficiaries. In 2007, Dobbins Ranch, LLC—owned by Dobbins—obtained a loan from Union and used the Policy as collateral. As collateral, Dobbins assigned the Policy to Union conveying "the sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity[.]" Dobbins and Union executed a form reflecting the assignment and sent it to Valley Forge. But, Valley Forge stated that it needed

---

[1] In 2014, Dobbins transferred ownership of the Policy to Lance, a transfer that was confirmed by Jackson National, the successor to Valley Forge, in 2015.

more information to process the assignment because a few portions of the assignment form were incomplete.

The Policy states that the insurance company is only bound by the assignment if certain requirements are met (the "paperwork provision"). The paperwork provision states that the Insurer is "bound by an Assignment only if [it] receive[s] a duplicate of the original Assignment at [its] Executive Office." There is also a formal assignment as collateral form that must be completed. The assignment form was never completed and the parties did not comply with the paperwork provision. In 2014, Jackson National ultimately communicated to Dobbins that the assignment was never accepted, therefore, the Policy "was never assigned to the Bank of Union."

Union was closed on January 24, 2014 and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver, succeeding to all of Union's rights and assets under 12 U.S.C. § 1821(d)(2). Dobbins died on November 12, 2015, with Dobbins Ranch in default on the Union loan. Dobbins Ranch owed more than $7.6 million on the defaulted loan. After Dobbins's death, L & R, Lance, and the FDIC all submitted claims for the full proceeds of the Policy.

In March 2016, Jackson National filed an interpleader action against L & R, Lance, the FDIC, and Newtek Small Business Lending, LLC ("Newtek"), Union's loan servicer. Jackson National moved the district court for (1) permission to deposit the insurance proceeds with the court and (2) a ruling to decide as a matter of law who was entitled to the Policy proceeds. Jackson National took no position as to who was entitled to the Policy proceeds and moved to be immediately dismissed from the case. The district court granted Jackson National's motion, contingent on its deposit of the full $1 million Policy proceeds with the court. Jackson National, however, only

deposited $910,888.82 with the court.[2] It did not interplead the full amount because Valley Forge misstated Dobbins's age in the Policy, and pursuant to the Policy's misstatement-of-age provision, Jackson National could at any time adjust the Policy proceeds amount so that it represented Dobbins's true age. Jackson National asked the district court to accept the reduced amount due to its invocation of the misstatement-of-age provision.[3] The district court denied Jackson National's motion. Accordingly, Jackson National filed an amended complaint seeking a declaratory judgment that the reduced proceeds complied with the Policy's terms.

After discovery, all parties moved for summary judgment. Jackson National moved for summary judgment on its declaratory judgment claim in which it sought a declaration that the reduced amount of proceeds was correct. L & R and Lance and the FDIC cross-moved for summary judgment on the issue of who was entitled to the Policy proceeds. In January 2018, the district court granted summary judgment pursuant to *City Nat'l Bank of Lawton v. Lewis*, 176 P. 237 (Okla. 1918) for L & R and Lance. The district court also granted Jackson National summary judgment, declaring that the reduced amount of the Policy proceeds was consistent with the Policy's terms. The FDIC timely appealed both judgments.

## II.   ANALYSIS

### a. *Jurisdiction*

We have jurisdiction pursuant to 28 U.S.C. §§ 1331, 1335, and 12 U.S.C. § 1819(b)(2)(A) because the FDIC is a party. When our jurisdiction is based on

---

[2] This amount encompasses the Policy amount minus attorney's fees, interest, and includes a partial refund of the monthly premium.

[3] The misstatement-of-age provision states that "[i]f the age or sex of the insured has been misstated, [the insurance company] will adjust the policy proceeds to the amount which the premiums paid would have purchased at the correct age or sex."

a federal question, we apply federal common law choice-of-law principles. *Singletary v. United Parcel Serv., Inc.*, 828 F.3d 342, 351 (5th Cir. 2016) (citing *Jimenez v. Sun Life Assurance Co. of Can.*, 486 F. App'x 398, 406 (5th Cir. 2012) (unpublished opinion)). The Policy does not include a choice-of-law provision; thus, the court must determine which state has the "most significant relationship to the transaction and the parties." Restatement (Second) of Conflicts of Laws § 188 (Am. Law Inst. 1971); *see also Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 891 (5th Cir. 1991) ("In contract cases, courts must consider such factors as the place of formation of the contract and the place of negotiation of the contract to determine which states have sufficient contact with the transaction and the parties to support the application of their law." (citing Section 188)).

The parties agree that Oklahoma contract law applies. Oklahoma has the most significant contacts because among other things, Dobbins is a citizen of Oklahoma and the Policy was entered into in Oklahoma. Therefore, Oklahoma contract law governs this case. *See Minton v. Minton*, 39 P.2d 538, 542 (Okla. 1934) ("[T]he insured being a resident of Oklahoma when the policy was signed, delivered, and the premiums paid, the policy is an Oklahoma contract and governed by the laws of Oklahoma[.]" (citation omitted)).

b. *Standard of Review*

We review a district court's grant of summary judgment de novo, applying the same standard as the district court. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citation omitted). Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted); *see also* Fed. R. Civ. P. 56(a). "The evidence of the non[]movant is to

be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). Not every factual dispute between the parties will prevent summary judgment; rather, the disputed facts must be material. *See Anderson*, 477 U.S. at 247-48. In other words, they must have the potential under the substantive law governing the issue to affect the outcome of the suit. *Id.* A nonmovant's mere beliefs, conclusory allegations, speculation, or unsubstantiated assertions are insufficient to survive summary judgment. *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) (citation omitted). "When parties file cross-motions for summary judgment, we review 'each party's motion independently, viewing the evidence and inferences in the light most favorable to the non[-]moving party.'" *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quoting *Ford Motor Co. v. Tex. Dep't. of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).

c. *Validity of Assignment*

The FDIC asserts that the assignment between Dobbins and Union was valid because both parties clearly intended to effect the assignment. Additionally, it asserts that *Alkire v. King*, 80 P.2d 309 (Okla. 1938) governs this case. It, therefore, argues that the insurer's acceptance of the assignment via the paperwork provision is not relevant to the assignment's validity. We agree with both assertions.

"Under Oklahoma law, no particular words are necessary to effect a contractual assignment; rather, the intent of the parties governs whether an assignment has been made." *Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 930 (10th Cir. 1994) (citing *Cobb v. Baxter*, 292 P.2d 389, 391-92 (Okla. 1956)). "[A]ny writing indicating the intention to pass the interest in the proceeds of the policy to the assignee is sufficient as an assignment." *Alkire*, 80 P.2d at 311

6

(citation omitted). Dobbins and Union executed a written assignment form establishing their intent to enter into an assignment.

Oklahoma law provides that "a policy may be assignable or not assignable, as provided by its terms." Okla. Stat. Ann. tit. 36 § 3624 (1957). To the extent that a policy includes a provision requiring acceptance by the insurance company, "the provision in the policy requiring approval or acceptance of the assignment is for the sole benefit of the company." *Alkire*, 80 P.2d at 309; *see also* 3 Couch on Ins. § 36:2 (2018) ("Provisions with respect to formalities of assignment are for the benefit of the insurer, and the insurer alone can complain of noncompliance."). Accordingly, "[t]here is no merit to the contention that the assignment is not valid because [it was] not accepted by the insurance companies." *Alkire*, 80 P.2d at 309.

Under Oklahoma case law, assignment provisions within insurance policies generally do not have a bearing on the validity of an assignment between competing beneficiaries or assignees but are only for the benefit of the insurance company, specifically when it is sued for failure to pay a policy's proceeds. *See Lewis*, 176 P. at 239 (lawsuit against insurance company for failure to pay policy proceeds to a bank pursuant to an oral assignment); *Bankers Healthcare Grp., Inc. v. Reassure Am. Life Ins. Co.*, No. CIV-10-1044-D, 2011 WL 4592493, at *5 (W.D. Okla. Sept. 30, 2011) ("Where, as in this case, [a breach-of-contract case against the insurer], the insurer's consent to an assignment is required, the assignee acquires no right *as against the insurer* in the absence of that consent.") (emphasis in original) (internal citations and quotation marks omitted).

L & R asserts that *Lewis*, not *Alkire*, governs this case, and the district court agreed. However, *Lewis* and *Alkire* do not stand for opposite propositions regarding the effect of the insurance company's acceptance of an assignment. The distinguishing factor between them is that in *Lewis* the insurance

company was a defendant and had not interpleaded any of the policy proceeds into the court. *See Lewis*, 176 P. 238 ("The [bank] instituted this suit against the defendants for the purpose of [transferring] the proceeds of a settlement of certain life insurance policies made by the defendant Martha A. Lewis with her codefendant, the Federal Life Insurance Company, with what is designated an equitable assignment."); *Alkire*, 80 P.2d at 310 ("The [insurance] companies are not involved here; the suit is between rival claimants to the funds which have already been received from the companies."). In this case, the insurance company is not a defendant, similar to *Alkire*, and has taken no position as to who is entitled to the Policy's proceeds. As a result, the paperwork provision does not apply to the assignment between Dobbins and Union.

The language of the assignment provision in this case states that the Policy is freely assignable, but that the insurance company is only bound by the assignment if the parties fully comply with the paperwork provision. The Policy does not contain any provision regarding the assignment's validity as between rival claimants for failure to comply with the paperwork provision. In fact, the Policy states that the insurer "takes no responsibility for the validity of the assignment." The paperwork provision only serves to establish that the insurance company will not be liable for failure to pay proceeds to an assignee if suit is brought against the company and the parties failed to comply with the paperwork provision.

We also note that Dobbins assigned the Policy as collateral for a loan, which the Policy and Oklahoma law allow. *See Prudential Ins. Co. of Am. v. Glass*, 959 P.2d 586, 591 (Okla. 1998) ("[T]he owner of a life insurance policy, assignable at his will, may assign all his/her interest in the policy for monetary consideration." (citing *Alkire*, 80 P.2d at 309)). Oklahoma law also treats the rights of a collateral assignee as "superior to [those] of the revocable beneficiary to the extent of the underlying debt." *Id.* at 592 (citing *McAllen State Bank v.*

No. 18-10347

*Tex. Bank & Tr. Co.*, 433 S.W.2d 167, 169-71 (Tex. 1968)). Further, the Policy states that "[i]f an assignment is collateral, the collateral Assignee has priority [over] the interest of any revocable [b]eneficiary or revocable payee[.]" Therefore, the FDIC as receiver for Union has an interest in the Policy proceeds superior to that of L & R and Lance. Consequently, because the FDIC has a superior interest and the amount that Dobbins owes on its loan is more than the value of the Policy proceeds, the FDIC is entitled to the entire amount of proceeds.

d. *Reduction of Policy Proceeds*

The FDIC asserts that Jackson National was not entitled to reduce the amount of the Policy proceeds because Valley Forge (and subsequently Jackson National) had knowledge of Dobbins's misstated age. Additionally, the FDIC asserts that Dobbins's age was misstated by Valley Forge, and thus, Jackson National cannot reduce the amount of the Policy proceeds based on Valley Forge's mistake.[4] Jackson National counters these assertions, arguing that the Policy's misstatement-of-age provision "simply operates to match the policy amount and the premiums to the true risk undertaken by the insurance company based on the correct age of the insured." Moreover, Jackson National argues that it only seeks to enforce the terms of the Policy, not to reform it.

Under Oklahoma law, misstatement-of-age provisions are required in each life insurance policy. Okla. Stat. Ann. tit. 36 § 4006 (1957). Additionally, Oklahoma law states that incontestability clauses cannot "be construed to preclude adjustment *at any time* of the amount payable or benefits accruing under the policy for misstatement of age, whether or not such age adjustment provision is excepted in such clause." *Id.* at § 4015 (emphasis added).

---

[4] Valley Forge misstated Dobbins's age when the Policy was initially secured, but it placed a note in the Policy documents noting his correct birthdate.

9

No. 18-10347

Thus, Oklahoma statutory law recognizes the ability of an insurance company to adjust the policy proceeds pursuant to a misstatement-of-age provision at any time absent contractual language to the contrary.[5] The plain text of the Policy does not place a time limit on adjusting the Policy based on a misstatement of Dobbins's age.

The FDIC cites several cases in which an insurance company was not allowed to adjust a policy because the company erred, but these cases are inapposite. In these cases, the insurance company was trying to invalidate a policy or to reduce its liability to only the premiums paid by the insured, which is distinguishable from Jackson National's desire to enforce the misstatement-of-age provision. *See Union Life Ins. Co. v. Evans*, 101 S.W.2d 778 (Ark. 1937); *N.C. Mut. Life Ins. Co. v. Banks*, 148 S.W.2d 54 (Tenn. 1940); *see also Lowenstein v. Old Colony Life Ins. Co.*, 166 S.W. 889 (Mo. 1914) (holding that because the insurance company had knowledge that the insured's age was incorrect and still chose to honor the policy, it could not reduce the amount of the proceeds based on the insured's misstatement of his age). Moreover, none of these cases are governed by Oklahoma law.

Jackson National only seeks to enforce the provisions of the Policy, and neither the plain language of the Policy nor Oklahoma law places a time limit on when the insurance company can adjust the policy based on the misstatement-of-age provision. Therefore, it was proper for Jackson National to reduce the amount of Policy proceeds based on Dobbins's true age. To the extent that the FDIC argues that Jackson National's declaratory judgment action was untimely, we again reiterate that there is no time limit on when an

---

[5] Under Oklahoma law each policy must have an incontestability clause stating that the policy "shall be incontestable, except for nonpayment of premiums, after it has been in force during the lifetime of the insured for a period of two (2) years from its date of issue." Okla. Stat. Ann. § 4004 (1957).

insurance company can enforce the misstatement-of-age provision. *See* Okla. Stat. Ann. § 4015.

## III.   **CONCLUSION**

For the reasons stated above, we REVERSE the district court's grant of summary judgment in favor of L & R and Lance and RENDER summary judgment in favor of the FDIC. Additionally, we AFFIRM the district court's grant of summary judgment in favor of Jackson National as to the reduction of the Policy proceeds.